Argued and submitted March 9, judgment of the Tax Court affirmed June 2, 1995

Julia D. RAGSDALE,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
STATE OF OREGON,
*Respondent.*

(OTC 3535; SC S41581)

895 P2d 1348

Gary R. DeFrang, of Wetzel DeFrang & Sandor, Portland, argued the cause for appellant. With him on the brief were Joseph Wetzel and Russell A. Sandor.

Marilyn J. Harbur, Assistant Attorney General, Salem, argued the cause for respondent. With her on the response was Theodore R. Kulongoski, Attorney General, Salem.

VAN HOOMISSEN, J.

Gillette, J., dissented and filed an opinion, in which Fadeley, J., joined.

Fadeley, J., dissented and filed an opinion.

## VAN HOOMISSEN, J.

In this direct appeal from the Oregon Tax Court, ORS 305.445, taxpayer challenges a judgment that denied her claim for a refund of state income taxes paid on her federal retirement benefits for the tax year 1991. *Ragsdale v. Dept. of Rev.*, 13 OTR 143 (1994). She claims that Oregon discriminates in taxation between state and federal retirees in violation of the federal constitutional and statutory doctrine of intergovernmental tax immunity.[1] This court reviews *de novo*. ORS 305.445; 19.125(3). For the reasons that follow, we affirm the judgment of the Tax Court.

At all times relevant to this appeal, retired public employees of the State of Oregon and of its political subdivisions and instrumentalities have received retirement benefits attributable to their employment under the Public Employes' Retirement System (PERS).[2] *See* ORS chapter 237 (Public Employes' Retirement). Before 1991, ORS 237.201 (1989) provided that PERS retirement benefits were exempt from all state taxes.[3] Further, ORS 316.680(1)(d) (1989) excluded PERS retirement benefits from the taxable income base on which state income taxes were computed. There was no comparable statutory provision exempting federal retirement

---

[1] 4 USC § 111 provides in part:

"The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States * * * by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation."

Intergovernmental tax immunity is based on the need to protect each sovereign's governmental operations from undue interference by the other. *Davis v. Michigan Dept. of Treasury*, 489 US 803, 814, 109 S Ct 1500, 103 L Ed 2d 891 (1989). 4 USC § 111 "waives whatever immunity past and present federal employees would otherwise enjoy from state taxation of salaries, retirement benefits, and other forms of compensation paid on account of their employment with the federal government, except to the extent that such taxation discriminates on account of the source of compensation." *Davis*, 489 US at 810.

[2] Members of the Oregon Public Employes' Retirement System (PERS) include employees of the State of Oregon and of its political subdivisions and instrumentalities. Throughout this opinion, they will be referred to as "state retirees" and their present or future benefits as "PERS retirement benefits."

[3] For a more detailed explanation of the statutory basis for the tax exemption of PERS retirement benefits, see *Hughes v. State of Oregon*, 314 Or 1, 6-10, 838 P2d 1018 (1992).

benefits from state taxes. As a result, Oregon taxed federal retirement benefits, but not PERS retirement benefits.[4]

In 1989, the Supreme Court of the United States decided *Davis v. Michigan Dept. of Treasury*, 489 US 803, 817, 109 S Ct 1500, 103 L Ed 2d 891 (1989). At issue in *Davis* was whether a Michigan statute that fully taxed all federal retirement benefits, but excluded from taxable income all retirement benefits received from the State of Michigan or its political subdivisions, violated the principle of intergovernmental tax immunity by favoring retired state and local government employees over retired federal employees based on the source of the benefits.[5]

In *Davis*, the Supreme Court held that, if a state exempts retirement benefits paid by state and local governments from state income taxes without similarly exempting retirement benefits paid by the federal government from state income taxes, then that state violates the principle of intergovernmental tax immunity. *Davis*, 489 US at 810-17. That is to say, a state may not discriminate in taxation between state and federal retirement benefits, based on the source of the benefits.[6] The Supreme Court stated: "It is undisputed that Michigan's tax system discriminates in favor of retired state employees and against retired federal employees." *Id.* at 814. Moreover, Michigan's inconsistent tax treatment of retired state employees and retired federal employees was not justified by "significant differences between the two classes" of employees. *Id.* at 817. The Court concluded that, by favoring retired state and local government employees over retired federal employees, the Michigan statute violated the principle of intergovernmental tax immunity. *Id.*[7]

---

[4] Federal civil service retirement benefits are deferred compensation for past years of service rendered to the federal government. *Davis*, 489 US at 808. Likewise, PERS retirement benefits are deferred compensation. *Hughes*, 314 Or at 25 n 30.

[5] At the time the Supreme Court decided *Davis*, 23 states gave preferential tax treatment to benefits received by employees of state and local governments relative to the tax treatment of benefits received by federal employees. *Harper v. Virginia Dept. of Taxation*, 509 US ____, 113 S Ct 2510, 125 L Ed 2d 74 (1993).

[6] The holding in *Davis* is to be applied retroactively. *Harper*, 509 US at ____, 113 S Ct at 2513. It also protects military retirees from discriminatory state taxation. *Barker v. Kansas*, 503 US 594, 112 S Ct 1619, 118 L Ed 2d 243 (1992).

[7] Under *Davis*, a state tax that is alleged to discriminate against federal retirees is evaluated by inquiring "whether the inconsistent tax treatment is directly related to, or justified by, 'significant differences between the two classes.' " 489 US at 816.

The appropriate remedy, the Court announced, is a mandate of "equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." *Id.* at 817-18.

"[A]ppellant's claim could be resolved either by extending the tax exemption to retired federal employees (or to all retired employees), or by eliminating the exemption for retired state and local government employees. * * * [T]he Michigan courts are in the best position to determine how to comply with the mandate of equal treatment." *Id.* at 818.

This court later applied *Davis* and held that Oregon's taxation scheme, which was similar to the Michigan taxation scheme challenged in *Davis*, "impermissibly discriminated against employees of the federal government in violation of the constitutional doctrine of intergovernmental tax immunity." *Ragsdale v. Dept. of Rev.*, 312 Or 529, 542, 823 P2d 971 (1992).[8]

In response to *Davis*, the 1991 Oregon legislature amended ORS 237.201 (1989) by repealing the tax exemption previously granted to PERS retirement benefits. Or Laws 1991, ch 823, § 1. The 1991 legislature also repealed ORS

---

The Court held that any difference in tax treatment between federal and state employees must be justified by significant differences between the two groups. According to the Court, Michigan's justification for its statutory exemption — its interest in hiring and retaining qualified civil servants — was irrelevant to any inquiry into the difference between the two classes, no matter how substantial such an interest might be. 489 US at 816.

In response to Michigan's argument that the exemption was designed to compensate for comparatively lesser benefits afforded by state retirement benefits as compared to federal benefits, the Supreme Court stated that, although this was probably true when comparing the average state employee to the average federal employee, it was certainly not true in a number of instances. Furthermore, the Court concluded, if the difference in pay were truly the state's motivation, it would have adopted a statute based on the amount of retirement benefits received, not on the source of the benefits. 489 US at 816-17.

[8] *Ragsdale* involved this same taxpayer's Oregon income tax liabilities for the years 1970 through 1988. This court ordered the department to issue a tax refund to taxpayer for the year 1988 and a refund of any excess tax paid by her for "any tax years thereafter, if any, in which federal retirement income was included in her state taxable income at a time when, for the same tax year, state retirement income was completely exempt from state taxation." *Id.* at 542.

316.680(1)(d) (1989), which excluded PERS retirement benefits from the state taxable income base. Or Laws 1991, ch 823, § 3. Following those statutory amendments, federal and PERS retirement benefits have been taxed alike under state income tax statutes.

The 1991 legislature also increased PERS retirement benefits payable to some state retirees. Or Laws 1991, ch 796. The increased PERS retirement benefits are based on an employee's years of service and range from one percent (10 to 20 years of service) to four percent (30 or more years of service). *Id.* at § 6. The benefits are not calculated on actual or even potential tax liability. That is to say, there is no mathematical correlation between taxes and the benefits created in 1991. Some state retirees who will be required to pay state income taxes on their PERS retirement benefits will receive no additional benefits under the 1991 law. Conversely, some state retirees who will pay no state income taxes will receive additional benefits. The benefits received pursuant to the 1991 statute are themselves subject to state and federal income taxation. The 1991 increase in PERS retirement benefits is funded by the PERS retirement trust fund. *See* ORS 237.271 (the Public Employes' Retirement Fund is a trust fund separate and distinct from the General Fund. Public employers that make contributions to the fund have no proprietary interest in the fund or in their contributions to the fund.).

Oregon Laws 1991, chapter 796, also provides that those increased PERS retirement benefits "shall not be paid in any tax year in which the retirement benefits payable under the Public Employes' Retirement System are exempt from Oregon personal income taxation." *Id.* at § 12. Oregon Laws 1991, chapter 796, section 12, further provides:

"In the event increased benefits under chapter 796, Oregon Laws 1991, are paid in a tax year in which the retirement benefits payable under the system are exempt from Oregon personal income taxation, the benefits shall not be recoverable by the system, but the Public Employes' Retirement Board shall insure that no additional amounts are paid under the provisions of chapter 796, Oregon Laws 1991."

Although the 1991 legislature chose to increase PERS retirement benefits payable to some state retirees, it did not extend

any reciprocal benefits to federal retirees taxed under Oregon Laws 1991, chapter 823.

Current and retired state employees affected by the 1991 legislative changes that subjected PERS retirement benefits to state income taxation sued the state for breach of their employment contracts. In *Hughes v. State of Oregon*, .314 Or 1, 33, 838 P2d 1018 (1992), this court held that, by subjecting PERS retirement benefits to state income taxation, the state had breached certain contracts between the state and its current and retired employees:

> "[B]y repealing the tax exemption previously afforded by *former* ORS 316.680(1)(d) (1989), section 3 of the 1991 law results in the taxation of PERS retirement benefits, an action in breach of the tax exemption term of the PERS contract. In other words, the state has chosen, pursuant to section 3 of the 1991 law, to breach the tax exemption term of the PERS contract that the state has with its employees. This the state may not do with impunity. Anyone whose PERS benefits are contractually exempt from taxation, in whole or in part, is entitled to a remedy for the state's breach."

This court declined to fashion a remedy for that breach of contract, leaving it to the legislature, in the first instance, to choose among the available remedies. *Id.* at 33 n 36.[9] Federal retirees, of course, were not parties to the *Hughes* litigation and, thus, they were not direct beneficiaries of its holding.

Taxpayer is a federal retiree and a resident of Oregon. During 1991, she received federal retirement benefits totaling $31,184, as compensation for services that she had rendered as an employee of the United States. The state tax liability attributable to that income was $2,865.06, which she paid in a timely manner. In 1992, taxpayer filed an amended individual income tax return requesting a refund of the $2,865.06, plus interest, arguing that Oregon impermissibly discriminated in the taxation of federal retirement benefits as compared to the taxation of PERS retirement benefits. The Department of Revenue (department) denied the refund.

---

[9] The legislature has yet to act in response to this court's holding in *Hughes*. New litigation currently is pending. *See, e.g., Chess v. State of Oregon*, 93C-11180 and *Stovall v. State of Oregon*, 94C-10334 (consolidated cases), Circuit Court, Marion County (1995).

Taxpayer appealed to the Oregon Tax Court, which sustained the department's order, explaining:

"[Taxpayer's] argument is based on an economic analysis which assumes the state may not do with the left hand what it cannot do with the right. An appropriate response to [taxpayer's] argument echoes the language of *Davis*: What the state does with regard to compensation of its employees, current or retired, is simply irrelevant to an inquiry as to the tax treatment of state and federal pensions.

"In essence, [taxpayer] argues that the state cannot change the compensation of its employees without forfeiting the right to tax federal pension income. This is the very type of interference that the doctrine of intergovernmental tax immunity was intended to prevent. *Davis* did not mandate that state and federal retirees must receive equal pension benefits. Rather, *Davis* requires that both classes must be treated equally by the state's income tax laws. That the state may relieve its employees of the economic consequences of *Davis* merely demonstrates that the Supreme Court threw its net into a shallow pond. The only economic effect noted by the court in *Davis* was an increase in federal income taxes 'in some circumstances.' *Davis* at 816, n 4. Aside from administrative confusion and the initial costs of refunds and adjusting systems, *Davis* need have little economic consequence in Oregon.

"In summary, [taxpayer] has not shown or asserted any discrimination in the tax treatment of state and federal retirees. *Davis* does not hold or even intimate that a state is prohibited from adjusting the compensation of its employees, either currently or retired, to make up for the loss of the exemption." *Ragsdale*, 13 OTR at 145-46.

Taxpayer then appealed to this court. ORS 305.445.

■ Taxpayer contends that the Tax Court erred in denying her claim for a refund of her personal income tax in the amount of $2,865.06, plus interest. She does not argue that any discrimination exists in the Oregon tax statutes *per se*, and she concedes that both federal and state retirement benefits are now taxed in like manner under the state income tax statutes. Rather, taxpayer argues that the imposition of an income tax on PERS retirement benefits by Oregon Laws 1991, chapter 823, section 3, was accompanied by a "tax rebate" to state retirees for the tax imposed, which federal retirees did not receive. Taxpayer further argues that state

retirees are entitled to a remedy for the state's breach of contract under *Hughes*, 314 Or at 33, when federal retirees do not have an equivalent advantage with regard to their federal retirement benefits. Thus, taxpayer asserts, because state retirees may receive, now or later, increased PERS retirement benefits under Oregon Laws 1991, chapter 796, and contract damages under *Hughes*, the state discriminates against federal retirees who receive no comparable amounts. The disparate tax treatment between the recipients of PERS retirement benefits and federal retirement benefits, taxpayer asserts, violates the principle of intergovernmental tax immunity. Therefore, taxpayer maintains, she is entitled to a refund of the discriminatory tax she paid for the 1991 tax year, plus interest.

The department does not dispute that the 1991 legislature increased PERS retirement benefits to compensate state retirees, in part, for their increased income tax obligations resulting from the enactment of Oregon Laws 1991, chapter 823. However, the department does not agree with taxpayer's argument that the legislature's decision to make those increased payments was an exercise of the state's taxing authority. The department argues that the state was acting consistently with its contracting authority in anticipating the need to make a contract benefit level adjustment, either as "damages" or otherwise, in contrast to its taxing authority.[10]

The department argues that, because Oregon taxes PERS retirement benefits and federal retirement benefits equally, and because taxpayer incorrectly equates an increase in PERS retirement benefits with a tax refund, her claim of

---

[10] The department argues:

"[T]he legislature enacted [Oregon Laws 1991, chapter 796,] prior to the decision of the Oregon Supreme Court in *Hughes*. Nevertheless, the legislature acted in anticipation of this court's decision in *Hughes*. The legislature is deemed to have been aware of the existing law, and could have reasonably anticipated the need to 'mitigate damages' by adjusting benefit levels as it did in [Oregon Laws 1991, chapter 796]."

In 1991, the legislature could not necessarily predict that in 1992 this court would hold in *Hughes* that the removal of the tax exemption was a breach of contract with a right of damages as a remedy. Indeed, in *Hughes*, the department argued against that result.

discrimination lacks merit. The department asserts that taxpayer has failed to recognize the distinction between a state adjustment of retirement benefit levels pursuant to contract and state action under its *taxing* authority.[11] The department further argues that payment of increased PERS retirement benefits to state retirees is compensation for services performed by the employees and that the payment of such benefits should not be characterized mistakenly as "imposition of a tax" or "a tax rebate" because, under *Hughes*, state retirees are lawfully entitled to an agreed upon level of retirement compensation, regardless of the form in which it may be paid.

The Supreme Court of the United States in *Davis* construed 4 USC § 111 to mandate "equal treatment" of recipients of state and federal retirement benefits. *Davis*, 489 US at 817-18. Accordingly, and subject to a showing that any inconsistent tax treatment is directly related to, and justified by, significant differences between the classes, a state may not discriminate *in taxation* between state and federal retirees, based on the source of the benefits. *Id.* at 817. The validity of taxpayer's argument hinges on the accuracy of her assumptions that the increased PERS retirement benefits of some state retirees under Oregon Laws 1991, chapter 796, and that the award of a remedy to PERS retirees pursuant to *Hughes* are, in effect, tax rebates to state retirees, which create discrimination in taxation between state and federal retirees based on the source of the benefits. Intergovernmental tax immunity, which is the legal predicate for taxpayer's challenge, is concerned with discriminatory tax treatment. Therein lies the imperative that taxpayer be able to show that the benefits received under Oregon Laws 1991, chapter 796, are, or that any remedy under *Hughes* is, in effect, a tax rebate or tax benefit provided by the state only to state

---

[11] We agree with the Tax Court that *Davis* does not hold or even intimate that a state is prohibited from adjusting the compensation of its employees, either currently or retired. *Ragsdale*, 13 OTR at 146. For example, if a comparable retirement benefit adjustment were provided in different legislation in further years, and denominated a "cost-of-living" adjustment, no one could argue seriously that that legislation discriminated in taxation against federal retirees. What is prohibited by *Davis* is taxation discrimination "on account of the source of the compensation" that is not "directly related to, and justified by, 'significant differences between the two classes.' " 489 US at 810, 816.

retirees in a manner that discriminates against federal retirees, based on the source of the benefits.

■    Intergovernmental tax immunity does not require that the state treat state and federal employees the same way, it requires only that the state system of taxation be equal. The statute and the doctrine provide that the United States consents to state taxation of its employees "if the taxation does not discriminate" against them because of the source of compensation.

It is important, first, to eliminate *Hughes* from further discussion. As noted, the 1991 statutory amendments were not, by definition, a legislative reaction to *Hughes*, much less a partial legislative award of damages for the breach of contract identified by that decision. *Hughes* was not decided until 1992, and the application — if any — of the doctrine of intergovernmental tax immunity to final resolution of damage actions brought in the wake of *Hughes* must await another day.[12] Taxpayer's sole viable argument in *this* case concerns the 1991 legislatively directed adjustment in PERS benefits.

With respect to Oregon Laws 1991, chapter 796, that statute contains indicia that could lead one to conclude either that the "benefits" are a kind of tax rebate or that the "benefits" are compensation. The provision to end the payments if state taxation ends points toward a tax rebate. However, for the reasons that follow, we conclude that, in context, the 1991 legislation is not a tax rebate or tax benefit that would implicate the principle of intergovernmental tax immunity. Nothing in the present Oregon system discriminates in taxation against federal retirees on account of the *source* of compensation.

---

[12] State retirees are currently litigating the nature and extent of the state's and other PERS' participating employers' responsibility for damages under the PERS contract as a result of the *Hughes* case. Those cases are currently pending in the Marion County Circuit Court. *See* note 9, above. Classes of plaintiffs and defendants have been certified. The measure of those damages is to be determined by the terms of the contract, as construed by the courts. But until the courts enter a decision as to those damages, taxpayer's claim that state retirees are being treated differently from federal retirees based on any damages that state retirees may be awarded in the future is premature. At this time there is no basis upon which to grant taxpayer's claim for a refund.

First, reference to the text of the *Davis* decision itself yields no indication that the federal doctrine of intergovernmental *tax* immunity concerns itself with the level of *compensation* that a state contracts to pay or pays its state retirees. 4 USC § 111, which codifies the doctrine of intergovernmental tax immunity, provides that the United States consents to the taxation of the compensation for services performed as a federal employee (including deferred compensation in the form of a federal pension), so long as the tax does not discriminate because of the federal source of that compensation. As with the *Davis* decision, nothing in 4 USC § 111 purports to control or concern itself with the level of *compensation* that the state pays its employees and retirees.

Second, not only is there nothing express in *Davis* or in 4 USC § 111 that would regulate the level of compensation of state employees, it would be illogical to suggest that there is anything in the underlying principle of intergovernmental tax immunity that would invalidate a state compensation plan in aspects unrelated to the level of taxation. The doctrine of intergovernmental tax immunity recognizes that separate state compensation responsibility to its officers and employees and requires only that the state treat service to the federal government in the same way that it treats service to the state government when taxing the compensation for that service. Since 1991, Oregon has done just that. As noted, taxpayer concedes that both federal and state retirement benefits are taxed in like manner under the state income tax statutes.

Third, in *Davis*, the Supreme Court stated possible remedies for the intergovernmental tax immunity problem that it found in that case. The Supreme Court pointed to state cures "by extending the tax exemption to retired federal employees (or to all retired employees), or by eliminating the exemption for retired state and local government employees." 489 US at 818. In direct response to *Davis*, the 1991 Oregon legislature amended ORS 237.201 to remove the tax exemption for PERS retirement benefits. That legislative act conformed Oregon law to the express dictates of *Davis*, by acting in a manner expressly approved by *Davis*.

Fourth, consistent with the points made above regarding state payment of *compensation* to its retirees, the

increase in benefits provided by the 1991 legislature is not part of the system of state *taxation* in Oregon. It does not involve the assessment or collection of revenues, which is the hallmark of a tax. *See Automobile Club v. State of Oregon*, 314 Or 479, 485, 840 P2d 674 (1992) ("In the most general sense, a tax is 'any contribution imposed by government upon individuals, for the use and service of the state * * *' "). It involves the *expenditure* of trust funds, not the collection of state revenues.

The 1991 increase in compensation is not transformed into a tax rebate or tax benefit simply because it was motivated in whole or in part as a response to the *Davis* decision and the consequent removal of the tax exemption for PERS retirement benefits. Moreover, it is important to remember that state retirees will pay state and federal income taxes on any increased benefits they receive.

Fifth and last, we find no correlation, either direct or indirect, between state retirees' state tax obligations and the amount of increased PERS retirement benefits, if any, to which they may be entitled under the provisions of Oregon Laws 1991, chapter 796. As noted, the amounts of increased retirement benefits are based on the PERS members' years of service, *not* on their state income tax obligations. All eligible PERS retirees receive those increased benefits. Moreover, the increased benefits received pursuant to the 1991 statute are themselves subject to state and federal taxation. Indeed, taxpayer's claim for a tax refund measured by the increased benefit paid to state retirees incorrectly assumes that every state retiree who receives an increase in benefits paid state income taxes, but it is conceivable that many state retirees paid little or no state income tax for 1991. *See, e.g.*, ORS 316.157 (credit for retirement income).[13]

---

[13] The department argues that taxpayer's claim for an amount of money equivalent to what was paid under Oregon Laws 1991, chapter 796, is speculative, because the amount of the payment bears no relationship to the actual state income tax paid by an individual PERS retiree for 1991 or any other year and, therefore, does not provide a good measure of "damages" for taxpayer. According to the department, credits or deductions for which a particular individual qualified in the 1991 tax year, or any other year, make generalizations about payment of income tax impossible. For example, ORS 316.157 (credit for retirement income) provided in 1991, and still does, for a credit in the amount of nine percent of net pension income to be taken against income tax by federal and state retirees. Application of that credit may reduce the state retirees' income tax related to PERS retirement benefits to zero. Because

In sum, taxpayer's argument lacks both a factual and a legal predicate. The system of state taxation is not implicated by the 1991 increase in retirement benefits to some state retirees and the principle of intergovernmental tax immunity does not apply, because there is no discrimination in taxation on account of the source of compensation.

Taxpayer relies on *Sheehy v. Public Employees Retirement Div.*, 262 Mont 129, 864 P2d 762, *reh den* (1993). In *Sheehy*, retirees challenged certain provisions of Montana law enacted in response to *Davis*. Before *Davis*, Montana, like Oregon, taxed federal retirement benefits but exempted state retirement benefits. *Sheehy*, 262 Mont at 132, 864 P2d at 764.

The Montana Supreme Court described the 1991 Montana legislature's response to *Davis* as follows:

"The Montana legislature subsequently passed Chapter 823, 1991 Montana Laws, which, according to its title, restructures the income tax on pension benefits by equalizing the taxation of all pension benefits. In lieu of extending the total exemption from taxation previously available to state retirement income to federal retirement income, the legislature opted in Chapter 823 to bring all retirement income — including both state and federal pensions — within the Montana income tax. * * *. In addition, section 5 of Chapter 823 grants to state retirees who are Montana residents, and who now were to be taxed in response to *Davis*, an annual retirement adjustment payment." *Sheehy*, 262 Mont at 132-33, 864 P2d at 764.

The Montana court concluded that the provisions of Montana Laws 1991, chapter 823, section 5, constituted discriminatory taxation in violation of the intergovernmental tax immunity provisions of 4 USC § 111, explaining:

"It is clear that the adjustment is not an actual and legitimate pension or retirement benefit. If it were a pension benefit, the State would have provided it to *all* of its retirees in recognition of their years of public service rather than just those living in Montana. There was no need to do so because the sole purpose of the adjustment was to partially recompense state retirees living in Montana for the tax they now must pay under the equalizing provisions of Chapter 823.

state retirees' income tax returns are not a part of the record in this case, the department cannot determine the extent to which that credit may have reduced tax payments for either federal or state retirees.

"Further evidence that the adjustment is not an actual increased retirement benefit for retired state employees is the fact that the funding of the section 5 adjustment bears no resemblance to the funding of actual state retirement benefit adjustments previously enacted by the legislature. [Such previous enactments were] funded by investment income produced by the retirement fund made up of employee and employer contributions. Here, the funding for the so-called retirement adjustment payment is statutorily appropriated from the general fund * * *.

"We conclude that the adjustment is a partial tax rebate denominated otherwise in an attempt to evade the requirements of federal law." *Id.* at 138-39, 864 P2d at 768 (citation omitted; emphasis in original).

Taxpayer argues that, Oregon Laws 1991, chapter 796, like the Montana enactment examined in *Sheehy*, is a partial tax rebate for state retirees and, therefore, that it constitutes discriminatory taxation of federal retirees who do not receive the same benefits. We disagree.

The *Sheehy* court's conclusion that the Montana adjustment is a partial tax rebate that violated federal law relied heavily on two features of the Montana enactment: (1) that only retirees who are Montana *residents* will receive the benefit, and (2) that the retirement benefits at issue are funded solely by the Montana *general fund.*

In contrast, under Oregon Laws 1991, chapter 796, every state retiree who qualifies for benefits (based on years of service) will receive the benefits, regardless of the state retiree's residency. Moreover, the challenged provisions of Oregon Laws 1991, chapter 796, do not appropriate money from the Oregon general fund. Rather, the increased PERS retirement benefits are funded by contributions from all PERS employers to the PERS retirement trust fund. Or Laws 1991, ch 796, § 3.[14]

■ Intergovernmental tax immunity is based on the need to protect each sovereign's governmental operations

---

[14] *Compare Hughes*, 314 Or at 27 (relying on earlier Oregon case law, concluding that PERS is a contract between the state and its employees), *with Sheehy v. Public Employees Retirement Div.*, 262 Mont 129, 133-34, 864 P2d 762, 765, *reh den* (1993) (relying on earlier Montana case law, concluding that Montana retirement benefits tax exemption laws do not constitute a contract).

from undue interference by the other. *Davis*, 489 US at 814. We agree with the Tax Court that *"Davis* does not hold, or even intimate that a state is prohibited from adjusting the compensation of its employees, either currently or retired, to make up for the loss of the [income tax] exemption." *Ragsdale*, 13 OTR at 146.[15]

Justice Gillette, dissenting, concludes that the state retirees' increased PERS retirement benefits are, in fact, a partial refund of state income taxes paid by state retirees on their PERS retirement income and would hold:

> "So long as there is a direct tie between state income taxation of PERS retirement benefits and the availability of increased PERS retirement benefits, it is not even necessary to inquire whether there are other, additional grounds on which to declare the present taxation scheme to be impermissibly discriminatory." 321 Or at 234 (Gillette, J., dissenting).

We are not persuaded by that analysis.

A tax rebate or tax benefit program only for state employees clearly would be impermissible. The Oregon law, however, is not a tax rebate program or a tax benefit. Everyone's income is taxed equally. The state is entitled to raise the level of taxable compensation of its employees, *for whatever reason*, including to compensate them for a change in the tax laws that results in a decreased level of net after-tax income.

For example, if the state government changed the state tax laws to limit the deduction for mortgage payments and chose to raise the level of state employees' compensation because of the change, that should not violate the federal law. Everyone is taxed in the same way; the state can pay its employees what it wants to pay them. Nor should it be deemed to violate the federal law if the raise is good only for as long as the tax law change is good, which is Justice Gillette's point of departure. That tie-in defines the duration of the change in taxable compensation, but it has no impact on the comparative equity of the state system of taxation.

---

[15] Because we hold that taxpayer has not shown any discrimination in the tax treatment of state and federal retirees, we need not consider the second prong of *Davis, i.e.,* whether any inconsistent tax treatment is directly related to, or justified by, significant differences between the two classes. 489 US at 816.

Nowhere in the federal doctrine of intergovernmental tax immunity is there the idea that a state's choice to expend more of its money on the compensation of state governmental employees violates the doctrine. That choice by the state may or may not increase the overall tax burden on everyone (state and federal public employees, private wage earners, businesses) depending on budget and taxation choices made by the legislature. Those are policy choices, subject to a watchful electorate that includes a vast majority of people who are not state employees, but they do not raise intergovernmental tax immunity concerns.

The state should be free to compensate its employees with its eyes open to the tax burdens that it places on them. We do not believe that the Supreme Court of the United States would assert that the principle of intergovernmental tax immunity deprives the state of its sovereignty to fix the level of its employees' compensation and to ensure that their net after-tax income is at a level commensurate with the agreement of the employees and the state. Federal employees lose the right to complain about inequality in the state tax system when the system treats them equally. Oregon now does that. Justice Gillette's analysis focuses on one fact, the durational tie-in to the tax laws of the raise in compensation, to the unwarranted exclusion of literally everything else. In context, we do not believe that that tie-in supports taxpayer's claim here.

Justice Fadeley, who concurred in part with this court's holding in *Hughes* that PERS retirement benefits accrued or accruing for work performed on or before September 28, 1991, may not be taxed, would have gone further in *Hughes* to hold that any action to tax PERS retirement benefits under Oregon Laws 1991, chapter 823, section 3, was unconstitutional. *Hughes*, 314 Or at 37-38 (Fadeley, J., concurring in part and dissenting in part). Implicit in his analysis is a conclusion that, under *Davis*, the state's only recourse is to exempt state and retirees' retirement benefits from state income taxation. In this case, Justice Fadeley pursues that same analysis to conclude that federal retirement income must be exempt from state income taxation. 321 Or at 235-36 (Fadeley, J., dissenting). His conclusion, however, is based on a faulty premise, *i.e.*, that the state could not tax PERS

retirement benefits. As this court held in *Hughes*, the state may tax PERS retirement benefits but, in doing so, the state became liable for damages for breach of contract. Because the state may tax PERS retirement benefits and does so, the state does not discriminate against federal retirees when it taxes federal retirement benefits equally.

We hold that the benefits paid to state retirees, pursuant to Oregon Laws 1991, chapter 796, do not give rise to a violation of 4 USC § 111 and the constitutional principle of intergovernmental tax immunity.

The judgment of the Tax Court is affirmed.

**GILLETTE, J.,** dissenting.

The majority today approves a legislative device specifically and narrowly tailored to avoid the rule of intergovernmental tax immunity that was explicated by the Supreme Court of the United States in *Davis v. Michigan Dept. of Treasury*, 489 US 803, 109 S Ct 1500, 103 L Ed 2d 891 (1989) and elaborated in *Harper v. Virginia Dept. of Taxation*, 509 US ___, 113 S Ct 2510, 125 L Ed 2d 74 (1993) (applying rule of *Davis* retroactively) and *Barker v. Kansas*, 503 US 594, 112 S Ct 1619, 118 L Ed 2d 243 (doctrine applicable to military retirees' pensions). Because I believe that the legislative scheme does not avoid discriminating between state and federal retirees pensions benefits, based on the source of those benefits, I dissent.

I begin with a proposition that I hope even the majority would accept: Just as *Davis* forbids total discrimination in taxation between state and federal retirement benefits, based on the source of those benefits, I conclude that *Davis* likewise forbids any alternatives to complete discrimination that nonetheless treat retirement benefits differently, depending on the source of those benefits. For example, a state may not erect a statutory scheme that requires that both state and federal retirees pay income taxes on their retirement income, but then provides for complete refunds only to state retirees of all taxes paid on their state retirement benefits. And, because a total, dollar-for-dollar refund to the state retirees in this case of any taxes that they have paid on their PERS retirement benefits would be impermissible, so would be some kind of proportional refund, such as 50 cents

for each dollar, unless, of course, federal retirees were accorded the same proportional refund on the income taxes that they paid the state on their retirement benefits.

But it is argued here — and the majority buys the argument — that the legislature's increase in PERS benefits, while motivated by the requirement that state retirees now pay taxes on their state retirement benefits, is nonetheless simply "increased compensation" and, as such, unrelated to any taxes that any federal retiree may be paying. With respect, I disagree. In spite of the difference in label — "refund" vs. "increased compensation" — I can find no difference in substance here. The pertinent focus here is the degree to which that "increased compensation" is tied to — indeed, is completely contingent on — an obligation on the part of state retirees to pay state income taxes on their PERS retirement benefits. When the state says to state retirees, "We will increase your retirement benefits, but only because you now are being taxed on them *and only for as long as you continue to be taxed on them*," the state is talking about a tax refund. And, because the state retirees are receiving a refund of taxes paid on their state retirement income to which federal retirees are not, on the same terms, entitled with respect to their federal retirement income, the violation of the doctrine of intergovernmental tax immunity, as explained in *Davis*, is patent. Substance counts; labels do not.

Even a cursory examination of Oregon's present "increased retirement benefits" arrangement shows that what is going on is, in fact, a *partial refund* of state income taxes paid by state retirees on their PERS retirement income. That proposition is demonstrated ineluctably by the fact that the increased PERS retirement benefits are not payable in any year in which PERS retirement benefits are exempt from Oregon personal income taxation. *See* Or Laws 1991, ch 796, § 12 (so providing). So long as there is a direct tie between state income taxation of PERS retirement benefits and the availability of increased PERS retirement benefits, it is not even necessary to inquire whether there are other, additional grounds on which to declare the present taxation scheme to be impermissibly discriminatory.

The department does not argue, in the alternative, that Oregon's inconsistent tax treatment between state and

federal retirees is permissible because it is directly related to, or justified by, significant differences between the two classes, *Davis*, 489 US at 815-16, 109 S Ct at 1508, 103 L Ed 2d at 905, and I do not perceive any such differences.

Based on the foregoing analysis, I would hold that Oregon Laws 1991, chapter 796, is a form of refund of state income taxes paid by state retirees on their PERS retirement income. The taxation of federal retirement benefits without such a refund is, therefore, discrimination in the tax treatment of state and federal retirements, based on the source of those benefits. As such, it is a violation of the doctrine of intergovernmental tax immunity and the mandate of *Davis* for "equal treatment." *Davis*, 489 US at 818, 109 S Ct at 1509, 103 L Ed 2d at 907. The majority errs in concluding otherwise.

I respectfully dissent.

Fadeley, J., joins in this dissenting opinion.

**FADELEY, J.,** dissenting.

I join in the dissenting opinion of Gillette, J., and add the following, also in dissent. In my view, by constitutional law, PERS retirement benefits accruing before 1991 are exempt from state personal income taxation. And, under *Davis v. Michigan Dept. of Treasury*, 489 US 803, 109 S Ct 1500, 103 L Ed 2d 891 (1989), federal employees' pre-1991 retirement benefits are similarly exempt. Equality of treatment is required by the doctrine of intergovernmental tax immunity. Therefore, a parallel exemption from state income tax must be accorded to federal retirees for parallel payments of parallel benefits, according to the Supreme Court of the United States.

In *Harper v. Virginia Dept. of Taxation*, 509 US ___, 113 S Ct 2510, 125 L Ed 2d 74 (1993), that Court summarized:

"The Michigan tax scheme at issue in *Davis* 'exempt[ed] from taxation all retirement benefits paid by the State or its political subdivisions, but levie[d] an income tax on retirement benefits paid by * * * the Federal Government.' 489 U.S., at 805, 109 S.Ct., at 1502. We held that the United States had not consented under 4 U.S.C. § 111 [1] to this discriminatory imposition of a heavier tax burden on federal benefits than on state and local benefits. *Id.*, at 817, 109 S.Ct. at 1508.

"[1] 'The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States * * * by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.' 4 U.S.C. § 111."

Relevant portions of the PERS trust fund capital and income cannot be taxed by the state when transferred to a retiree now or later without impairing the obligation of contract, in my view.[1] Thus, the exemption for PERS benefits that accrued before enactment of the 1991 legislation applies by force of the state constitution. And under federal law, equality of tax treatment is required for federal retirees' parallel benefits.

## THE STATUTE AT ISSUE

The plaintiff here contends that a separate statute enacted in 1991 is a continuation in disguise of the former tax exemption for PERS participants and, therefore, that separate statute also violates *Davis*, because plaintiff, as a federal retiree, is not granted the same treatment in relation to state taxation. She points to Oregon Laws 1991, chapter 796, as the culprit. That act mandated that added payments be made out of the PERS fund to the beneficiaries of that fund, namely PERS retirees. Section 3 of that 1991 act amended ORS 237.209, a pre-existing statute section describing monthly

---

[1] In *Hughes v. State of Oregon*, 314 Or 1, 838 P2d 1018 (1992), I pointed out that the state must honor its obligation to preserve tax exemption for PERS retirement benefits accrued before 1991. I explained:

"The promise was embodied in statute. The statute proclaimed: 'The right of a [PERS member] to a pension * * * shall be exempt from * * * all state, county and municipal taxes heretofore or hereafter imposed.' ORS 237.201 (1989). The trust funds out of which the pension will be paid amounted to $12.5 billion in mid-1991. These trust funds are also covered by the promise of tax exemption by the language in ORS 237.201 extending the promise to cover 'the money in the various funds created by ORS 237.271 and 237.281.' " (Fadeley, J., concurring in part and dissenting in part.) 314 Or at 37.

Restrictions on government acts that impair the obligations of contracts have existed as a constitutional guarantee — and a protection of those who contract with government — since the birth of our federal nation.

*See also United States Trust Co. v. New Jersey*, 431 US 1, 97 S Ct 1505, 52 L Ed 2d 92 (1977) (a seven member decision applying Article I, section 10, clause (1), of the United States Constitution, to invalidate state legislation that repealed a "covenant" previously enacted by statute promising that all of certain revenues would be pledged as security for bonds to be sold, the repeal coming after that promise was accepted by purchase of the bonds).

benefit levels, by adding a new subsection (6) which increased the monthly retirement allowance payable to specified retirees. The increased payment is one percent for those with at least 10 years of service at retirement and ranges upward to four percent for those with over 25 years of service in the PERS system.

Subsection (6) of the 1991 act provides that these increases "shall be funded by employer contributions." That is, they probably will be paid from a current and future increase in employer contributions, although whether the increase comes from past employer contributions held in trust or from current and future increased contributions is not clear in that statute.

## TAXPAYER'S ARGUMENTS

Plaintiff claims that the doctrine of intergovernmental tax immunity requires that she receive an exemption from the state income tax equal to the disguised preferential tax treatment that is represented by those added benefit payment amounts. Other subsections of that act, not created or amended in 1991, have, on several occasions since 1980, mandated similar percentage increases. Those increases have had no relation to the *Davis* decision. However, the state cannot merely rely on its past practice to justify a discriminatory tax-treatment device enacted post-*Davis* and in response to problems presented by *Davis*.

In support of her argument, plaintiff also points to a decision of the Montana Supreme Court, *Sheehy v. Public Employees Retirement Div.*, 262 Mont 129, 864 P2d 762 (1993). The underlying facts of that case are far afield from this case. That state did not owe its retirees any contractual obligation of tax exemption.

The partial tax rebate, enacted by the 1991 Oregon legislature, expressly conditions the added benefits payable to PERS retirees on the fact that no state tax exemption is available for the regular amount of PERS payments for any year in which the percentage increment is to be added. Or Laws 1991, ch 796, § 12.

The legislation thus signals that the sliding-scale, percentage increment is not granted out of legislative largess

or a kindly concern about inflationary effects and increases in cost of living for those on fixed incomes. The legislature's motivation in 1991 — its intent by enacting chapter 796 — is the same as that which originally created the tax exempt status for PERS retirement benefits as a term of the public employment contract in Oregon, namely, to save and maximize the use of taxpayer dollars. Originally, the tax exemption for PERS benefits permitted paying a lesser total dollar amount of retirement benefits which in turn required fewer governmental tax dollars to fund. Tax free treatment also saved the cost of churning the same governmental dollars through an additional state agency, or through the same agency a second time. The failure to grant tax free treatment to federal retirement benefits, and *Davis*, ended that economy. The 1991 legislation continues to indicate a preference for the cost-saving exemption and thus only adds the percentage increment to retirement benefits in years in which the tax exemption is not in force.[2]

But in years where there is no exemption for PERS payments accruing before 1991, the state and local governments are not living up to their statutory contracts and are obligated to repay to PERS retirees the value of the governmental promise which has been unconstitutionally removed from their pre-1991 employment contracts. The significance of conditioning the additional payment on absence of a state tax exemption is compounded by the relevant statements of the executive-branch revenue agency that is the defendant in this case. Defendant's stated posture indicates its assumption or belief that the legislature was increasing retirement payments, in years where PERS payments are not exempt, to partially[3] off-set the added taxes to be paid by PERS retirees.

No such off-set is provided federal retirees. The majority opinion justifies this disparity by pointing out that the obligation of the state and local government contract that promises to exempt pre-1991 PERS benefits from taxes is not

---

[2] The extra retirement benefit, funded by added governmental dollars is a "tax expenditure" in fiscal parlance, very similar to a direct tax credit or refund granted by law. The effect on the mathematical balance of the state budget, as to state retirees, is the same.

[3] *See Hughes*, 314 Or at 40-41.

an obligation owed to federal retirees. Although that is correct, the national law also requires equal or parallel tax immunity for retired federal employees. That also is a legal obligation of the state and its local governments.

The 1991 legislative repeal of the prior tax exemption, coupled with legislation mandating a government-paid partial offset as to state and local retirees, fails to fulfill the latter legal obligation, especially where a course of action that clearly fulfills that obligation is so readily available.[4] The Supreme Court of the United States, whose jurisdiction includes enforcing the legal obligations owed by the states in the area of intergovernmental tax immunity, has not been impressed by state explanations of why those obligations do not apply in similar settings to federal employees. *Davis v. Michigan Dept. of Treasury*; *Harper v. Virginia Dept. of Taxation*. I would hold that the state legislation attacked today cannot, in the circumstances of this case, fulfill either obligation. Tax exemption per the original obligation of contract can do so, but not this half-a-loaf to half-the-people approach.

---

[4] I refer to the option of exempting both state and federal retirement payments accrued before 1991.