Argued and submitted September 4, 1997; resubmitted June 17, judgment of Tax Court in *Vogl* reversed, and case remanded to Tax Court for further proceedings; judgment of circuit court in *Dixon* affirmed in part and reversed in part, and case remanded to circuit court for further proceedings June 18, 1998

John F. VOGL,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent.*

(OTC 3605; SC S43375 (Control))

Orville B. BUFFINGTON
and Orville B. Buffington
as Successor in Interest to
Stefania M. Buffington, Deceased,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent.*

(OTC 3606)

Marvin M. CARLSON
and Joyce M. Carlson,
*Appellants,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent.*

(OTC 3607)

Cara KIDD, Jr.,
and Nola E. Kidd,
*Appellants,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent.*

(OTC 3608)

Helen I. STANLEY,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent.*

· (OTC 3609)

Kenneth R. AVERY
and Doris E. Avery,
*Appellants,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent.*

(OTC 3610)

James M. DIXON
and David W. Fluaitt,
*Appellants,*

*and*

Robert E. RENN (deceased),
*Plaintiff,*

*v.*

STATE OF OREGON,
Jim Hill, Treasurer,
and Barbara Roberts, Governor,
*Respondents.*

(CC 9311-07480; CA A93208; SC S43379)
(Cases consolidated for argument and opinion)

960 P2d 373

Michael G. Hanlon, Portland, argued the cause for appellants. With him on the briefs was Eugene O. Duffy, of O'Neil Cannon & Hollman, P.C., Milwaukie, Wisconsin.

Michael D. Reynolds, Assistant Solicitor General, Salem, argued the cause for respondents. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Kulongoski, and Leeson, Justices.

GILLETTE, J.

## GILLETTE, J.

■ The primary issue in these consolidated cases is whether Oregon Laws 1995, chapter 569, a statute that increases Public Employees Retirement System (PERS) benefits to compensate for "injuries" to PERS beneficiaries that arise out of the taxation of their PERS benefits, violates the "equal tax treatment" requirement that is inherent in the federal doctrine of intergovernmental tax immunity.[1] The plaintiffs in these two very different cases argue that the answer to that question is "yes" and that the courts below erred in concluding otherwise. We agree with plaintiffs that the statute violates the requirement of equal tax treatment and that the contrary decisions of the Oregon Tax Court and Multnomah County Circuit Court must be reversed.

We begin our analysis with a brief history of the state's long-running struggle concerning the requirements of the intergovernmental tax immunity doctrine. That history begins in 1989, with the United States Supreme Court's decision in *Davis v. Michigan Dept. of Treasury*, 489 US 803, 109 S Ct 1500, 103 L Ed 2d 891 (1989). In *Davis*, federal government retirees challenged a Michigan statute that exempted retirement benefits paid by state and local governments from state income taxes, without extending a similar exemption to retirement benefits paid by the federal government. The Supreme Court concluded that the statute violated the principle of intergovernmental tax immunity. *Id.*, 489 US at 817. *Davis* also held that Michigan could remedy that violation "either by extending the tax exemption to retired federal employees * * * or by eliminating the exemption for retired state and local government employees." *Id.* at 818.

---

[1] In simple terms, the doctrine of intergovernmental tax immunity forbids direct taxation of one sovereign by another as well as indirect taxes that discriminate against those with whom the sovereign deals. *Davis v. Michigan Dept. of Treasury*, 489 US 803, 811, 109 S Ct 1500, 103 L Ed 2d 891 (1989). Although the doctrine has its roots in the United States Constitution, it is expressed most succinctly in a statute, 4 USC § 111, which provides, in part:

"The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States * * * by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation."

After *Davis*, it became clear that Oregon would have to make adjustments to its individual income tax system, because that system contained a discriminatory element similar to Michigan's—a longstanding tax exemption for income from the state employee retirement system (PERS), with no equivalent exemption for federal retirement benefits. Faced with the choice outlined in *Davis*, between extending or eliminating the problematic exemption, the 1991 Oregon legislature opted for the latter route, repealing the PERS exemption and a related statute that excluded PERS retirement benefits from the state taxable income base. Or Laws 1991, ch 823, §§ 1 & 3.

The foregoing legislative choice would have been a significant financial setback for Oregon government retirees, except for one thing: Within days of repealing the PERS exemption, the legislature enacted Oregon Laws 1991, chapter 796, which increased PERS retirement benefits by up to four percent for those who had retired in the system, depending on the individual retiree's years of service with the state. Notably, section 12 of that statute provided that the increase would not be paid "in any tax year in which [PERS benefits] are exempt from Oregon personal income taxation." Section 12 thus made it clear that the statutory increase in benefits was meant to offset, at least to some extent, the loss of the tax exemption that PERS retirees previously had enjoyed.

The actions of the 1991 legislature were attacked, almost immediately, on two fronts. Retired employees of the state and its political subdivisions challenged the repeal statute (chapter 823) in *Hughes v. State of Oregon*, 314 Or 1, 838 P2d 1018 (1992), arguing that the repeal impaired the state's contractual obligation to provide PERS retirement benefits free of taxation and therefore violated Article I, section 26, of the Oregon Constitution (relating to impairment of contracts). This court accepted that argument only in part, concluding that (1) PERS members had a contract with the state to receive PERS retirement benefits free from state and local taxation, (2) the repeal amounted to a breach (but not an impairment) of that contract, and (3) "[a]nyone whose PERS

benefits are contractually exempt from taxation * * * is entitled to a remedy for the state's breach." *Id.* at 33.[2]

Federal retirees also were dissatisfied with the 1991 legislature's response to *Davis*. Their position was asserted in *Ragsdale v. Dept. of Rev.*, 321 Or 216, 895 P2d 1348 (1995), *cert den* 516 US 1011, 116 S Ct 569, 133 L Ed 2d 493 (1995). In *Ragsdale*, a federal retiree sought a refund of that portion of her Oregon state taxes that were attributable to federal retirement benefits. She argued that, despite the repeal of the PERS exemption, Oregon continued to operate a discriminatory and, therefore, unlawful, tax system, because (1) under *Hughes*, PERS recipients, but not federal retirees, are entitled to a contract remedy for the loss of the tax exemption and (2) under Oregon Laws 1991, chapter 796, PERS recipients, but not federal retirees, had been given what amounted to a tax rebate to make up for the lost exemption.

This court rejected the latter argument, identifying several factors as pointing to a conclusion that the 1991 benefit increase was "compensation," rather than an unlawful "tax rebate:" (1) the 1991 legislature had obeyed the express dictate of *Davis* by repealing the PERS exemption; (2) *Davis* and, more generally, the principle of intergovernmental tax immunity, are indifferent to the level of *compensation* a state pays to its retirees; (3) the 1991 PERS increase was not part of the system of *taxation* in Oregon but, instead, involved the *expenditure* of retirement trust funds in the form of increased compensation; and (4) there was "no correlation, either direct or indirect, between state retirees' state tax obligations and the amount of increased PERS retirement benefits" under the 1991 statute. *Id.* at 227-28. Notably, the court expressly declined to address plaintiff's arguments pertaining to *Hughes*, because the 1991 statutory amendments were not a legislative reaction to that case. 321 Or at 226.

---

[2] This court declined to express any opinion as to what the remedy for the breach should be, noting that "the legislature is the most appropriate branch of government in the first instance to choose among the available remedies." *Hughes*, 314 Or at 33, n 36. The balance of the history that we recite here is the story of the legislature's ongoing effort to steer between the Scylla of *Davis* and the Charybdis of the state's legal obligation not to tax the benefits of PERS retirees.

In 1995, the legislature again enacted a statutory increase in PERS benefits, this time clearly in reaction to *Hughes*. Like the 1991 statute, Oregon Laws 1995, chapter 569, increases the retirement benefits payable to PERS members for any year in which PERS income is not exempt from Oregon personal income taxation[3] and pays for that increase by enlarging employer contributions to the PERS fund. However, the 1995 adjustment differs from the 1991 adjustment in several respects. First, it adjusts benefits using a formula that is more closely and obviously tied to the Oregon personal income tax rate.[4] Second, it applies that formula only to that portion of a PERS member's income that is attributable to service rendered before October 1, 1991, the effective date of the exemption repeal. Or Laws 1995, ch 569, § 3(4)(b). Third, it provides that no PERS member "shall acquire a right, contractual or otherwise, to the increased benefits." *Id.* at § 2(3). Finally, it expressly states, in a variety of ways, that the increased benefits are provided as full and final payment of damages for any claim arising out of the repeal of the previously existing exemption. For example, section 2(1) provides:

"The increased benefits provided by section 3 of this 1995 Act, and by the amendments to ORS 237.209, 237.230, 237.233, and section 14, chapter 796, Oregon Laws 1991, by

---

[3] The increase is reflected in two types of payments: (1) a one time lump sum payment on January 1, 1996; and (2) increased future PERS benefits.

[1] Section 3(4) provides:

"(a) The Public Employe's Retirement Board shall calculate a multiplier for the purposes of this section equal to the percentage produced by the following formula:

$$\frac{1}{1 - \text{the maximum Oregon personal income tax rate}}$$

"(b) Upon the retirement or death of a member of the system, the board shall determine the fraction of the member's retirement allowance or death benefit, including any refund or lump sum payment, that is attributable to service rendered by the member before October 1, 1991. The board shall then calculate a percentage that is equal to that fraction multiplied by the multiplier determined by the board under paragraph (a) of this subsection. The percentage so calculated shall be used to determine the amount of the increase in benefits provided to a member, if any, under this section."

Moreover, section 3(7) provides that the formula must be adjusted to reflect any changes in the maximum Oregon income tax rate.

sections 5, 6, 7 and 8 of this 1995 Act, are paid to members of the Public Employes' Retirement System and their beneficiaries in compensation for damages suffered by those members and beneficiaries by reason of subjecting benefits paid pursuant to ORS 237.301 to 237.315 to Oregon personal income taxation. The increased benefits provided by this 1995 Act are intended to provide full, complete and final payment of any claim of a member of the system, or a beneficiary of a member, arising out of the taxation of those benefits."

In a related vein, section 2(4) provides:

"Notwithstanding any other provision of law, a class action may not be commenced on or after the effective date of this 1995 Act based on a claim for damages arising out of the subjecting of benefits paid pursuant to ORS 237.301 to 237.315 to Oregon personal income taxation."[5]

The issue in the present cases is whether the foregoing changes dictate a legal outcome that is different from that reached in *Ragsdale*.

We turn to the procedural history of the present cases. The *Vogl* case began in 1993, when plaintiffs, who are retired from federal government service, filed amended tax returns for the tax years 1991 and 1992, seeking refunds of Oregon personal income taxes that they had paid in those years on their federal retirement benefits. When the Department of Revenue (the Department) denied plaintiffs' claims, they appealed to the Oregon Tax Court. At the Tax Court, plaintiffs argued that, despite the repeal of the discriminatory PERS exemption, Oregon's tax system continued to discriminate against federal retirees, in violation of 4 USC section 11, *Davis*, and the doctrine of intergovernmental tax immunity. They alleged, in particular, that

---

[5] The 1995 statute also requires that the increase be reported to the Internal Revenue Service and to the Department of Revenue separately from other benefits paid to members and that

"[r]eporting under this subsection must be consistent with the characterization of those benefits as being made in compensation for Oregon personal income taxes assessed in breach of contract rights of members of the system."

*Id.* at § 2(5). Section 2(5) was repealed by the 1997 Legislature. Or Laws 1997, ch 175, § 4.

"[t]he remedy afforded Oregon PERS retirees in *Hughes v. State of Oregon*, 314 Or 1, 838 P2d 1018 (1992), together with the enactment of Or Laws 1991, ch 796 and *any other action which increased PERS benefits to compensate PERS retirees for (or to offset the effect of subjecting PERS benefits to) state income taxation, create a disparate tax structure which violates the equal treatment mandate of Davis.*"

(Emphasis added.)

Two significant events occurred in the course of the *Vogl* proceedings: this court issued its decision in *Ragsdale*, and the legislature enacted Oregon Laws 1995, chapter 569, the second of the two benefit increases discussed above. The Department responded to the *Ragsdale* decision by filing a summary judgment motion in the Tax Court case, arguing that the *Ragsdale* decision essentially resolved the *Vogl* action in its favor. Plaintiffs responded that *Ragsdale* did not address the effect of Oregon Laws 1995, chapter 569. However, the Tax Court ultimately agreed with the Department and granted the Department's summary judgment motion.

On direct appeal to this court, ORS 305.445, the *Vogl* plaintiffs contend that the Tax Court erred in concluding that denial of their claims is compelled by *Ragsdale*. Plaintiffs note that the opinion in *Ragsdale* addresses only the 1991 benefit adjustment statute and does not speak to the later (1995) statute.[6] They argue that the 1995 statute is "directly and precisely calculated to give PERS members a tax rebate"—a result that, even under *Ragsdale*, is impermissible.

It is obvious from the foregoing description that, although Oregon Laws 1995, chapter 569, was enacted *after* the *Vogl* case was commenced, its effect, *vis-a-vis* the intergovernmental tax immunity doctrine, nevertheless is squarely at issue in *Vogl*. Arguably, however, the same cannot be said about the *Dixon* case, which we now describe briefly.

---

[6] Plaintiffs note, and the Department agrees, that the complaint fairly encompasses the 1995 statute, because it refers to "any * * * action which increased PERS benefits to compensate PERS retirees for * * * state income taxation."

■    In *Dixon*, plaintiffs, a group of individuals who had retired from both state and federal government service, filed an action against the state in the Multnomah County Circuit Court, asking that court to declare their remedy under *Hughes*.[7] In their complaint, plaintiffs noted that *Hughes* had established the right of PERS retirees to recover some amount in damages for the loss of their contractually based tax exemption. They alleged that the legislature had failed to provide that remedy during the 1993 legislative session. Plaintiffs further alleged that the state could not meet the equal treatment mandate of *Davis* by taxing both PERS and federal retirement benefits equally, while at the same time fulfilling its *Hughes* obligation to provide PERS retirees a remedy for its taxation of contractually tax exempt benefits. Plaintiffs asked the court to declare what they deemed to be the only legally tenable *Hughes* remedy— reinstatement of the exemption for PERS benefits and extension of that exemption to federal pension benefits. Later, plaintiffs and defendants filed a joint memorandum of trial stipulations and contentions that added (or clarified) a contention that, "[i]rrespective of the nomenclature, the state may not use an artifice (whether called damages, rebates, retroactive increases in benefits or any similar device) to * * * compensate solely PERS recipients for the taxation of their benefits."

As in the *Vogl* case, both this court's decision in *Ragsdale* and the enactment of Oregon Laws 1995, chapter 569, then occurred. In response to the latter event, plaintiffs moved for permission to supplement their complaint by adding challenges to the new statute's adequacy under *Hughes*. Defendants opposed that motion, suggesting that, without such supplementation, the case was ready to be decided. The trial court agreed with the state, denied the motion to supplement and, ultimately, issued a judgment for defendants. The court held that plaintiff's claims as state retirees became moot after the adoption of Oregon Laws 1995, chapter 569,

---

[7] The fact that plaintiffs were seeking a declaration of their remedy for a judicially recognized breach of contract made the issue an appropriate one for determination by the circuit court, rather than the Oregon Tax Court. *See* ORS 305.410 (Oregon Tax Court declared to be "the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under the tax laws of this state.").

and that the issues presented were controlled by the decision in *Ragsdale*.

The *Dixon* plaintiffs appealed to the Court of Appeals, assigning error to the trial court's denial of their motion to supplement and to its failure to issue the declaration that plaintiffs sought. With respect to the latter assignment, plaintiffs argued that their claims were neither moot nor controlled by *Ragsdale*. The Court of Appeals certified their appeal to this court, and it was consolidated with *Vogl* for purposes of review.

In *Dixon*, a large part of the controversy in this court is whether the 1995 statute was pleaded or argued. Although that controversy is important (and, perhaps, even dispositive) within the confines of that case, it is best left to a later point in this opinion. We begin, instead, with the issue that is echoed in *Vogl*: Does *Ragsdale* compel a conclusion that the 1995 adjustment in PERS benefits violates the doctrine of intergovernmental tax immunity?

Predictably, all the arguments by the parties are framed in terms of *Ragsdale*. Both sets of plaintiffs (plaintiffs) argue that, contrary to the views separately expressed by the Tax Court and the circuit court, *Ragsdale* does not resolve the *Davis* issue with respect to the 1995 statute. Plaintiffs note, first, that *Ragsdale* explicitly declined to address the intergovernmental tax immunity implications of a *Hughes* remedy, an issue that clearly is raised by the 1995 enactment. Plaintiffs further note that *Ragsdale* itself acknowledges, both explicitly and implicitly, that a tax rebate program aimed solely at PERS members would violate *Davis*. Finally, plaintiffs note that there are aspects of the 1995 statute that were not present in the 1991 statute at issue in *Ragsdale*—most significantly, that the increase in benefits is tied directly to the rate of taxation and that the statute expressly announces its compensatory purpose. Plaintiffs conclude that, regardless of the status of the 1991 statute at issue in *Ragsdale*, it is abundantly clear that the 1995 statute was designed to, and does, offer a tax rebate on a discriminatory basis, *viz.*, that the rebate goes solely to PERS members.

Defendants respond that any question regarding the intergovernmental tax immunity implications of Oregon

Laws 1995, chapter 569, is resolved by *Ragsdale*, because there is no legally significant distinction between the two statutes. Defendants concede that the express purpose of the 1995 increase is to offset the loss of the tax exemption formerly available to PERS members and that the statute is drafted more specifically to achieve that purpose than was its 1991 predecessor. They argue, however, that *Ragsdale*'s analysis of the 1991 statute turned not on the *formula* used to calculate the amount of the increase, but on the fact that the increase would be paid to PERS retirees *regardless of their actual individual tax obligations*. That aspect is repeated in the 1995 statute. More importantly, defendants argue, the factors that plaintiffs rely on are irrelevant because, under *Ragsdale*, neither a compensatory purpose nor effect transforms a benefit increase into a tax rebate.

■■ In view of the parties' competing contentions, it is imperative to sort out what *Ragsdale* does (and does not) say. We begin with one obvious point. *Ragsdale* clearly endorses the notion that, just as a tax *exemption* that discriminates against federal retirees would violate the doctrine of intergovernmental tax immunity, so would a tax *rebate* that discriminates against federal retirees. *See Ragsdale*, 321 Or at 231 ("A tax rebate or tax benefit program only for state employees clearly would be impermissible."). A less obvious point, but a significant one, is that *Ragsdale* does *not* say or imply that an act of governmental largesse must be *labeled* a tax rebate in order to qualify as one. If anything, *Ragsdale* suggests just the opposite, *viz.*, that, in the world of intergovernmental tax immunity, substance does count.

That latter point is evident from *Ragsdale*'s discussion of *Sheehy v. Public Employees Retirement Div.*, 262 Mont 129, 864 P2d 762 (1993). In *Sheehy*, the Montana Supreme Court invalidated a nominal increase in pension benefits to state retirees on intergovernmental tax immunity grounds, finding that the increase was a "partial tax rebate denominated otherwise." In explaining what it viewed as the irrelevance of *Sheehy* to the 1991 Oregon statute, this court never suggested that the whole notion of a "tax rebate denominated otherwise" was specious; rather, the court carefully differentiated the particulars of the Montana law at issue in *Sheehy* from those of Oregon Laws 1991, chapter 796. *Ragsdale*, 321 Or at 230-32. The dissent in *Ragsdale* relied on the rationale

expressed in *Sheehy*. *See Ragsdale*, 321 Or 233-35 (Gillette, J., dissenting). Thus, this *entire court* accepted the *Sheehy* principle. The dispositive factors separating the majority and dissent were based on the peculiar characteristics of the 1991 statute.

■    We turn to Oregon Laws 1995, chapter 569, which, as we previously have noted, differs from its predecessor in several significant ways. First, unlike the flat percentages employed in the 1991 statute, the 1995 statute increases benefits by way of a formula that is fairly closely matched to the task of replacing PERS income that will be lost to taxes. In theory, that formula will leave PERS recipients with an after-tax amount that roughly approximates what they would have received, had their pension (or that portion of it that vested before 1991) been tax exempt. The formula parallels the maximum state income tax rate, including allowing the increase to rise and fall along with that rate. Although, in any individual case, the formula can only approximate the amount needed to offset the effect of 1991 repeal, the formula is as close as the state can get to replicating the effect of the repealed tax exemption without delving into individual tax circumstances.

On the other hand, as with the 1991 increase, entitlement to the 1995 increase is not conditioned on *actual* liability for an equivalent amount in state taxes. PERS recipients receive the increase even if they pay little or no state income tax on their PERS benefits. Again, although the increase *generally* replicates the effect of a tax rebate, it may or may not have that effect in individual cases.

The upshot of the foregoing discussion is that, although the 1995 statute is similar to its 1991 predecessor in that it does not purport to offset, dollar for dollar, the amount lost to the exemption repeal in every individual case, its design and effect far more closely match such a purpose. Clearly, as the state moves closer to replacing the lost net income on a dollar-for-dollar basis, the fact that the increase is in fact a tax *rebate*, rather than a general increase in compensation to "make up" for lost net income, becomes more apparent. That is particularly so in view of the fact that the increase is available *only in those years when PERS benefits are not tax exempt*. Although that fact, by itself, does not

transform the increase into a tax rebate, *Ragsdale* at 231, it is a relevant consideration where, as here, other suggestive factors are present.

A second notable point about the 1995 statute is that it provides expressly that "[no PERS member] shall acquire a right, contractual or otherwise, to the increased benefits provided [therein.]" Or Laws 1995, ch 579, § 2(3). Although that fact does not point *particularly* to a tax rebate, it does point *away* from defendants' contention that the increase is simple compensation. If the increase were, in fact, part of PERS employees' compensation, we would expect those employees to obtain a vested right to it. *See Taylor v. Mult. Dep. Sher. Ret. Bd.*, 265 Or 445, 450-51, 510 P2d 339 (1973) (noting that Oregon follows contract theory of pensions, under which a pension is viewed as part of employee's promised but delayed compensation for the performance of his job).

Finally, the 1995 statute expressly announces that the increase is paid "in compensation for damages suffered by members of [PERS] * * * by reason of subjecting [PERS] benefits * * * to Oregon personal income taxation" and is intended as "full, complete and final payment of any claim of a member of the system * * * arising out of the taxation of those benefits." Or Laws 1995, ch 569, § 2(1). Implicit in that provision is the legislature's acknowledgment of the holding in *Hughes* that the state has breached its contractual obligation to pay PERS members tax-free retirement benefits and is obliged to provide a remedy for that breach. Section 2(1) makes it clear that the increase is provided to discharge the state's legal obligation to compensate those injured by the breach.

The state cannot have it both ways. It cannot claim that, for one purpose, the increase is legal compensation, *i.e.*, damages, while, for other purposes, it is "merely" a retirement "benefit." The two concepts have independent legal significance, for tax and other purposes,[8] and, unless we are prepared to turn an entirely blind eye to those sometimes

---

[8] It would appear that the 1997 repeal of section 2(5) of Oregon Laws 1995, chapter 569, is in partial recognition of that problem. Section 2(5) called for separate reporting of the increased amount to the Department of Revenue and the Internal Revenue Service as "compensation for Oregon person income taxes assessed in breach of contract rights of members of the system."

incompatible legal ramifications, we must treat the two as mutually exclusive. The legislature's designation of the increase as legal compensation shows, in other words, that it is not a mere benefit increase. The increase purports to give PERS retirees what they were promised, *viz.*, tax-free retirement benefits. Because the retirees *were taxed*, the increase is the cure. And a cure for being overtaxed is a *rebate*. The increase provided by Oregon Laws 1995, chapter 569, is just that—a rebate. Calling it increased compensation does not change its nature.

Put another way, the legislature's award of legal compensation is (or at least purports to be) the amount that, in the eyes of the law, is needed to make the injured PERS members whole. The relationship between the lost exemption and the 1995 increase, therefore, is not merely one of logical causation (the relationship that was discussed in *Ragsdale*), but of purported legal equivalence.

Taken collectively, the foregoing aspects of the 1995 statute satisfy this court that the benefit increase provided therein is, in substance, a tax rebate. There is relatively little in the statute to pit against that suggestion—only the facts that the increase is to be funded by employer contributions, Or Laws 1995, chapter 569, section 3(6), and that it applies without regard to individual tax circumstances. Although those latter factors were deemed sufficient in *Ragsdale* to counteract the relatively weak evidence that the 1991 increase was a tax rebate, they cannot carry the day against the stronger circumstances in the present context.

The foregoing conclusion resolves the question that is before us in *Vogl*. The Tax Court's grant of summary judgment for the Department was predicated on a rejection of the plaintiffs' assertion that Oregon Laws 1995, chapter 569, is a disguised tax rebate. We reverse that judgment and remand the case to the Tax Court for further proceedings.

The effect of the foregoing conclusion on *Dixon* is less immediately obvious. The *Dixon* plaintiffs brought their claims both as federal and state retirees and sought a declaration that they were entitled to tax exemptions in both of those roles. In denying the relief sought, the trial court offered the following two-part explanation:

"It appearing that plaintiffs' claims as state retirees are, for the purposes of the present litigation, made moot by the adoption of Or Laws 1995, ch 569 (House Bill 3349), and it further appearing that the issues presented by the parties to this court in the pending litigation are controlled by the decision of the Oregon Supreme Court in *Ragsdale v. Dept. of Revenue*, 321 Or 216, [895] P2d [1348] (1995) and no good cause to the contrary appearing,

"It is this 27th day of November, 1995, ordered that judgment being the same is hereby entered in favor of the defendants and against plaintiffs * * *."

Clearly, insofar as the opinion of the circuit court purports to decide that the 1995 statute comports with the equal treatment mandate of *Davis*, it is wrong. The 1995 statute may have undermined plaintiffs' claims, as state retirees, that the state had failed to provide an appropriate *Hughes* remedy, but their essential claims as *federal* retirees for equal tax treatment remained viable, albeit in a somewhat different form than originally pleaded.[9] In that regard (as

---

[9] Throughout most of the litigation, plaintiffs had argued that, under *Davis*, any *Hughes* remedy, other than a tax exemption for both PERS and federal retirement benefits, would have to be extended to federal retirees. However, when the 1995 statute was introduced as a possible resolution of the case, the emphasis shifted away from that general argument, directed at *Hughes* remedies *per se*, to a more specific argument about the 1995 statute itself. Plaintiffs moved to supplement the pleadings to include allegations that the 1995 statute provided an inadequate *Hughes* remedy to plaintiffs as PERS retirees and that it violated the equal tax treatment requirement of *Davis*. Defendants responded by arguing that supplementation should not be permitted, because the issue of the statute's adequacy as a *Hughes* remedy could and should be left to another case and that the *Davis* issue had been resolved in light of *Ragsdale*:

"*Ragsdale II* is persuasive authority that these plaintiffs have no complaint against the State because of PERS benefits increases adopted in [Or Laws 1995, ch 569] * * *.

"Plaintiffs would argue that *Ragsdale II* did not decide whether HB 3349 violated the principles of *Davis v. Dept. Of Treasury*. Of course, they would be technically correct in this argument, since HB 3349 became law only after *Ragsdale II* was decided. However, the analysis by the Court in Ragsdale II applies with equal force to HB 3349 as it did to the benefits directly under consideration there."

It is clear (both from the judgment itself and from the denial of the motion to supplement) that, in rendering judgment for defendants, the court did *not* purport to decide that the 1995 statute provided an adequate *Hughes* remedy. On the other hand, it would appear (both from the fact that the judgment failed to explicitly reserve that issue and from the fact that the parties had presented substantive arguments on that issue) that the court necessarily *did* decide the *Davis* question with respect to the 1995 statute.

should be clear from the preceding discussion), plaintiffs have made their case: The increase provided by Oregon Laws 1995, chapter 569, substantially eliminates the tax on PERS benefits, without extending the same favorable tax treatment to federal retirement benefits. As such, plaintiffs were entitled to a declaration that they were entitled to a refund of the amount of state income tax paid on their federal retirement income.

■    However, for the reasons expressed above, plaintiffs were not entitled to a similar declaration with respect to the taxes paid on their PERS income. As we explained in *Hughes*, we leave it to the legislature to choose among the available remedies for the state's breach of its contract with its employees with respect to that income. *Hughes*, 314 Or at 33 n 36. This court remains available to assess the legality of the legislative choice, whatever that may be. That is true even if, from the point of view of a particular group of plaintiffs, the legislative choice is somewhat belated.

Plaintiffs argue that, contrary to the circuit court's judgment, their state PERS claims were not "made moot" by the enactment of Oregon Laws 1995, chapter 569. Plaintiffs contend that they are entitled to obtain a declaration of their rights as PERS retirees because, even with the 1995 enactment, a substantial controversy continued to exist.

In theory, plaintiffs are correct that the 1995 statute did not "moot" their action as PERS retirees. However, it did resolve at least a portion of that action: Once the legislature had designated its choice of remedies, plaintiffs no longer could claim a right to a tax refund as a default remedy. Plaintiffs may have been entitled to *some* declaration of their rights as PERS retirees, but, within the context of their unsupplemented pleadings and contentions, the declaration could not be the one that they sought.

■    Recognizing the foregoing point, plaintiffs argue that the circuit court erred in denying their motion to file supplemental pleadings challenging the adequacy of the 1995 enactment as a *Hughes* remedy. They argue that, in general, supplementation should be allowed as a matter of course. They also argue that, in these particular circumstances (where the court would resolve the case by taking judicial

notice of the statute), the denial of the motion to supplement amounted to a denial of due process.

■ We disagree. A trial court ruling on a motion to supplement pleadings will not be reversed except for abuse of discretion. *Pacific Form Corp. v. Burgstahler*, 263 Or 266, 274, 501 P2d 308 (1972). Given that the case, as pleaded and argued, was ready to be decided, that the trial court granted plaintiffs leave to pursue their new claims in a new action, and that the court even went so far as to waive the filing fee in any such action, we cannot say that denial of the motion to supplement was an abuse of discretion. Whatever may be the position of the federal courts regarding its federal equivalent,[10] the discretion conferred by ORCP 23 E is broad, and we will not lightly interfere with it.[11]

■ Neither do we see the denial of plaintiff's motion as presenting a due process problem. Basic notions of fair play are not offended by a trial court's ruling that limits the issues that the court will decide to those that have been pleaded and argued.

To conclude: Plaintiffs as PERS retirees are not entitled to the declaration that their PERS income is exempt from state income taxation. In the context of the unsupplemented pleadings and contentions, the trial court's refusal to issue such a declaration was permissible. However, plaintiffs as federal retirees are entitled to a declaration that Oregon Laws 1995, chapter 569, extends a tax rebate to PERS retirees and that, under the principle of intergovernmental tax immunity, they are entitled to an equivalent tax benefit.

---

[10] Plaintiffs rely on *LaSalvia v. United Dairymen of Arizona*, 804 F2d 1113 (9th Cir 1986), *cert den* 428 US 928, 107 S Ct 3212, 96 L Ed 2d 699 (1987), for the proposition that it is an abuse of discretion to deny a motion to file a supplemental pleading in the absence of a showing of undue prejudice.

[11] ORCP 23 E provides:

"Upon motion of a party the court *may*, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."

(Emphasis added.) Our holding on this issue is not intended to suggest that it is the better ruling or the ruling that we would make. It also may be true that, in view of the ruling that we have made in the *Vogl* case, the trial judge will see fit, either on motion or *sua sponte*, to reconsider her decision when the case is before her on remand. Judicial economy would be served by such a choice.

We emphasize that our holding necessarily is confined to the 1995 statute. We do not overrule *Ragsdale* or its analysis of the 1991 law. Neither do we direct any particular legislative remedy for the problem identified in this opinion. The legislature may, for example, eliminate any further litigation over intergovernmental tax immunity by granting equal tax exemptions to PERS retirees (under the *Hughes* rationale) and to federal retirees. We hold only that the present legislative "fix" of the problem is impermissible.

The judgment of the Tax Court in *Vogl* is reversed, and the case is remanded to the Tax Court for further proceedings. The judgment of the circuit court in *Dixon* is affirmed in part and reversed in part. The case is remanded to the circuit court for further proceedings.