Argued and submitted October 14, 1999, judgment of Tax Court affirmed
March 3, 2000

# POWER RESOURCES COOPERATIVE,
*Appellant,*

*v.*

# DEPARTMENT OF REVENUE,
*Respondent.*

## (OTC 4032; SC S45799)

996 P2d 969

I. Franklin Hunsaker, Portland, argued the cause and filed the briefs for appellant. With him on the briefs were Stephen B. Hill, R. Erick Johnson, and Bullivant Houser Bailey.

James E. Wallace, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With him on the brief were Hardy Myers, Attorney General, and Marilyn H. Harbur, Assistant Attorney General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs, Justices.**

GILLETTE, J.

** Kulongoski, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

In this direct appeal from a decision of the Tax Court, the issue is whether a part of the real and personal property that makes up the electric transmission system known as the "Pacific Northwest Intertie" (the Intertie) should be included in the assessed value of taxpayer's property. Taxpayer is entitled to use the Intertie under a form of contract called a "Capacity Ownership Agreement." The Department of Revenue (Department) ruled, and the Tax Court agreed, that taxpayer's right to use the Intertie was subject to taxation. We agree with the Department and the Tax Court that, under the agreement, taxpayer "holds" a share of the Intertie within the meaning of the pertinent statute, and that the Department therefore properly assessed taxpayer for a part of the Intertie's value.

Taxpayer is an electrical cooperative that owns shares in a number of electrical generation facilities, including the Boardman Coal Plant. In 1992, taxpayer entered into a long-term power sale agreement to sell electricity from the Boardman plant to a California irrigation district. The agreement required taxpayer to use its "best efforts" to transmit the power via the Intertie. The Intertie, an electric power transmission system that runs from Canada to the United States-Mexico border, is owned largely by the Bonneville Power Administration (BPA), an agency of the United States government.

In 1994, in an apparent effort to meet its obligations under the foregoing power sale agreement, plaintiff entered into an "Intertie Capacity Ownership Agreement" with BPA. Under that agreement, plaintiff received 50 megawatts (MW) of transmission capacity for the physical life of the Intertie, in exchange for a lump sum payment of approximately $10.75 million in advance[1] and a promise to pay a proportionate

---

[1] Taxpayer entered into the Capacity Ownership Agreement with BPA at a time when BPA was engaged in a significant expansion of the Intertie to accommodate new capacity owners. Taxpayer's initial lump sum payment represented a percentage, based on taxpayer's capacity ownership share, of the "actual capital and related costs" of that expansion.

share of the Intertie's operating, maintenance, and replacement expenses.[2] The agreement defines taxpayer's capacity ownership share in terms of the number of MW of BPA's rated transfer capability over the Intertie that was "owned by [taxpayer] pursuant to this agreement."

Under the Capacity Ownership Agreement, BPA retains all rights to operate, maintain, and manage the Intertie. Although taxpayer is entitled to 50 MW of capacity of the Intertie at any given time, it must schedule its electrical transmissions with BPA in advance and must abide by BPA's scheduling procedures. An amendment to the Capacity Ownership Agreement clarifies that taxpayer has a right to use its capacity share to "wheel" electricity for other entities. It also clarifies BPA's responsibilities with regard to any part of taxpayer's 50 MW that taxpayer fails to use, *i.e.*, schedule, at any given time. The agreement permits BPA to use that unscheduled capacity, but requires BPA to compensate taxpayer for its use.

In 1996, the Department assessed taxpayer's property for the 1996-97 tax year at an amount in excess of $45 million, which included nearly $11 million as the value of taxpayer's share of the Intertie. Taxpayer appealed that assessment to the Tax Court, arguing that it should not be assessed for its capacity ownership share in the Intertie. The Department responded that taxpayer's share of capacity of the Intertie was taxable, either as "[r]eal and personal property of the United States * * * held by any person under a lease or other interest or estate less than a fee simple" under ORS 307.060 or as "intangible property" under ORS 308.510(1).[3] Both parties moved for summary judgment.

The Tax Court granted the Department's motion for summary judgment, denied taxpayer's motion, and entered judgment affirming the Department's assessment order. The Tax Court concluded that taxpayer had exclusive control,

---

[2] At present, 50 MW represents a little more than one percent of the Intertie's total capacity of 4800 MW.

[3] ORS 308.510(1) defines "property" for purposes of assessment of designated utilities as including intangible property used or held by the company for or in the performance or maintenance of its business.

subject to reasonable limitation, over a part of the Intertie and, therefore, "held" that part of the Intertie within the meaning of ORS 307.060.[4] The present appeal followed.

■      ORS 307.060 sets out an exception to a more general statute, ORS 307.040, that exempts all property of the United States from taxation. ORS 307.060 provides, in part:

> "Real and personal property of the United States or any department or agency thereof *held by any person under a lease or other interest or estate less than a fee simple* * * * shall be assessed and taxed as for the full assessed value thereof subject only to deduction for restricted use."

(Emphasis added.)

Taxpayer contends that the Tax Court's reliance on ORS 307.060 was error. In ORS 307.060, taxpayer argues, the term "hold" denotes some kind of actual physical possession and occupation of the property at issue, along with control of the property and an ability to exclude others from it. Taxpayer maintains that only BPA can be said to "hold" the property that makes up the Intertie and that BPA's physical possession or occupancy of the system prevents anyone else, including taxpayer, from also "holding" it in the same sense. Taxpayer concludes that, although it has a right to use a part of the capacity of the Intertie under the Capacity Ownership Agreement, it does not "hold" any portion of the physical property that makes up the Intertie within the meaning of that statute.

Taxpayer relies primarily on *Sproul et al v. Gilbert et al*, 226 Or 392, 359 P2d 543 (1961). In *Sproul*, this court considered the meaning of ORS 307.060 in connection with a dispute about the taxation of rights to graze on United States Forest Service land. The court compared two types of grazing arrangements: (1) grazing permits, which gave ranchers a nonexclusive right to graze their cattle within a designated grazing district; and (2) grazing leases, which gave ranchers an exclusive right to graze their cattle on designated land that was not part of an official grazing district. The court held

---

[1] The Tax Court did not rule on the Department's alternative theory that taxpayer's Capacity Ownership Share in the Intertie is taxable as intangible property under ORS 308.510(1).

that grazing leases were taxable under ORS 307.060, while suggesting that grazing permits were not. *Id.* at 400.

The *Sproul* court reasoned that ORS 307.060 applies only to possessory interests:

> "The question then is whether ORS 307.060 was intended to embrace derivative interests from the federal government other than possessory interests, *i.e.*, to include as being taxable interests easements, profits and other incorporeal interests. Considered separately, the term 'or other interest' is broad enough to include non-possessory interests. However, we do not think that the term was used in ORS 307.060 in this broad sense. The statute provides that the interests described 'shall be assessed and taxed as for the full true cash value thereof subject only to deduction for restricted use.' * * * We do not think that the legislature intended that one who has a mere incorporeal interest such as an easement or a profit is to be taxed the 'full true cash value' of the land with a deduction for the 'restricted use.' We believe that the statute was intended to apply where the person holding under the United States had an interest of such dignity that it could be regarded as tantamount to a present temporary ownership warranting an assessment of it to him on the basis of its 'full true cash value.' * * * We construe the statute to include only interests which are capable of possession."

*Id.* at 423-24 (original emphasis omitted). Ultimately, the *Sproul* court concluded, grazing lessees have a sufficient possessory interest in the designated grazing land to implicate ORS 307.060, primarily because their use of the parcel is relatively exclusive and because the restrictions imposed on their use are consistent with a leasehold arrangement. On the other hand, the court suggested that grazing permittees, who held only a right to run a certain number of cattle within a shared grazing district, lacked a sufficient possessory interest in the land that made up the grazing district to trigger ORS 307.060. *Sproul*, 226 Or at 397-420.

Taxpayer contends that, under the reasoning of *Sproul* and a later case, *Ore. Summer Hm. Owners v. Johnson*, 265 Or 544, 510 P2d 344 (1973),[5] its interest in the

---

[5] *Ore. Summer Hm. Owners* involved the Department's decision to tax owners of summer homes that were built on United States Forest Service land for the

Intertie is not the type of property that is taxable under ORS 307.060. Taxpayer contends that its rights under the Capacity Ownership Agreement are like those conferred by a grazing permit: Taxpayer's right to use the Intertie is shared with others, and taxpayer does not occupy physically or control any definable part of the Intertie. Finally, taxpayer notes that even its use of the Intertie is subject to stringent scheduling and advance notice provisions. Ultimately, taxpayer argues, all that it has under its Capacity Ownership Agreement with BPA is a prepaid, long-term transmission service agreement, not a possessory interest in the real and personal property that comprises the Intertie.

We disagree. Although it is true that, under *Sproul*, ORS 307.060 applies only to "possessory" interests in property, that concept of possession is more flexible than taxpayer suggests. The *Sproul* court expressly noted that "possession" is a variable term that has different meanings in different circumstances:

> "A part of the variability in the meaning of possession arises out of the fact that possession has meaning only in terms of actual or potential use and because the uses to which land may be put vary from parcel to parcel. When the property is amenable to many uses, the right to use it for a single limited purpose might not constitute possession; yet, the same right to use may well be regarded as possessory if the land in question is susceptible to only a limited number of uses."

226 Or at 404. In a related vein, the *Sproul* court added:

> "There is no exact judicial gauge which can be set against the facts to prove our conclusion with mathematical precision. The exclusiveness of one's occupancy is a matter of degree. We can only compare the respective ownership interests — principally the usufructuary rights — of the transferor and the transferee, and if we find that the transferee has been granted the privilege of occupancy together with a sufficient share of these interests we describe his right as 'possession.'"

---

value of the land that they occupied. This court concluded that the homeowner's permits conveyed possessory interests in the land that were comparable to the grazing leases in *Sproul*, primarily because they could exercise a high degree of control and exclusivity over the properties. The court concluded, therefore, that the permittees were subject to taxation for the land that their homes occupied under ORS 307.060. 265 Or at 550.

*Id.* at 405-06.

■ ■    The foregoing paragraphs from *Sproul* make two points that extend beyond the specific facts of that case and that are relevant to the present controversy: (1) although a "possessory" interest always is marked by some degree of control and some degree of exclusivity, neither absolute control nor absolute exclusivity is required; and (2) the test for the existence of a possessory interest necessarily varies with the nature of the property at issue.

With the foregoing points in mind, we turn to taxpayer's contention that its right to use the Intertie is nonpossessory because that right is shared with others and is subject to various restrictions. We begin with the fact that the particular type of right that taxpayer has in the Intertie, *i.e.*, to transmit electricity over it, is a right to use the Intertie for its only apparent beneficial use. *See Sproul*, 226 Or at 404-05 (where plaintiff's use of government land for grazing embraced substantial part of all the land's practical uses, that use was relatively exclusive).

Taxpayer is correct in stating that it must share the transmission capacity of the Intertie with others. However, even if taxpayer does not have exclusive rights to the entire transmission capacity of the Intertie, it does have an exclusive right to a definable part, *viz.*, 50 MW. Moreover, taxpayer has a great deal of control over that 50 MW share. Taxpayer may choose to use the 50 MW in whatever manner it wishes, *i.e.*, it may choose to transmit its own electrical output, or it may, instead, "wheel" electricity that is produced by others. Morever, and even if taxpayer chooses not to use all its capacity share to transmit electricity, it retains a palpable right to the entire 50 MW: If BPA "borrows" any capacity that taxpayer has failed to schedule at any given time, then it must reimburse taxpayer for such use. Finally, taxpayer's 50 MW share exists for the lifetime of the Intertie; it is not revocable; and it cannot be diminished, for example, by the addition of more capacity owners.

Taxpayer argues that those interests, taken together, cannot be deemed to constitute a possessory interest in the Intertie, because its use of the Intertie is subject to various scheduling requirements. However, those requirements appear to us to be precisely the kind of restrictions

that joint owners or lessees of this kind of property would impose on themselves in the interest of orderly operation. Such restrictions are consistent with a possessory interest. *Cf. Avis Rent A Car System, Inc. v. Dept. of Rev.*, 330 Or 35, 40-41, 995 P2d 1163 (2000) (decided under parallel statute; reservation to others of right to use leased property did not change lease into some lesser interest).

The foregoing discussion leaves us with taxpayer's primary assertion, *viz.*, that possession requires exclusive physical occupation and control of property that is defined in *space*. In that regard, taxpayer notes that, in *Sproul*, the court suggested that a grazing permit would not confer a possessory interest in United States Forest Service land, because permittees do not have exclusive use of a specific area of land. *Sproul*, 226 Or at 400. Taxpayer argues that, in like manner, it does not possess any part of the property that makes up the Intertie, because the Capacity Ownership Agreement does not confer on it any exclusive right to occupy or control a *spatially* defined portion of that property.

That argument factually is accurate, but it misses the point. *Sproul* might suggest that relatively exclusive control over a defined area is a necessary component of possession of the kind of property that was involved in that case and for the purposes to which that property was to be used, but it also teaches that the notion of "possession" varies with the property at issue. *See also Avis*, 330 Or at 40 (demonstrating flexibility of the concept of a taxable possessory interest). The property involved in this case—an electric transmission grid—cannot physically be divided usefully among its owners. However, that limitation has not prevented taxpayer from investing in the expansion of the system, sharing the costs of its upkeep, and thereby obtaining an exclusive right to use and control the system to the extent necessary to permit transmission of 50 MW of electricity for taxpayer's own benefit. In this context, that is sufficient; taxpayer's 50 MW capacity ownership share in the Intertie is a possessory interest in that entity. Put differently, taxpayer "holds" a share of the property that makes up the Intertie and may be assessed and taxed for that share to the extent provided in ORS 307.060.

■■ Taxpayer contends that, even if it does "hold" a proportionate share of the Intertie within the meaning of ORS 307.060, application of that statute in this case violates the principle of intergovernmental tax immunity and, consequently, the United States Constitution.[6] Taxpayer notes that, under the Department's administrative rule OAR 150-307.110, state and local property may be taxed to a nonexempt party only if the property is occupied by the party and the party has been granted "exclusive possession of a definitely described area for a specified period of time."[7] Taxpayer contends that that rule would preclude the Department from assessing users of state property who operate under contracts that are similar to its "capacity ownership" contract with BPA and that the constitutional principle of intergovernmental tax immunity prohibits any different treatment with respect to contract users of federal property.[8]

---

[6] The doctrine of intergovernmental tax immunity forbids direct taxation of one sovereign by another as well as indirect taxation that discriminates against those with whom the sovereign deals. *See Vogl v. Dept. of Rev.*, 327 Or 193, 197 n 1, 960 P2d 373 (1998) (describing principle of intergovernmental tax immunity).

[7] OAR 150-307.110 provides, in part:

"(1) Qualifying Conditions. The assessor shall assess and tax publicly owned real or personal property for the real market value thereof uniformly with real property of nonexempt ownerships when the following conditions of a lease or other interest or estate less than fee simple are met. A lease or other possessory interest exists if the *occupant* is granted *exclusive possession of a definitely described area for a specified period of time* (term).

"(2) Exclusive Possession. The test is whether the *occupant* has sufficient control over the premises to warrant the label of possession. If the *occupant* can exclude others, including the owner (except for inspection, making repairs, etc.) the occupant has possession. *But, if the premises must be shared with others, such as a common pasture, the occupant does not have a possessory interest.*"

(Emphasis added.)

[8] Taxpayer cites *Phillips Chemical Co. v. Dumas School Dist.*, 361 US 376, 80 S Ct 474, 4 L Ed 2d 384 (1960), for the proposition that the principle of intergovernmental tax immunity can apply in this situation. *Phillips* pertained to a Texas statute that subjected to state taxation any part of federal property "which is used and occupied by any person [or business] in its private capacity, or which is being used or occupied in the conduct of any private business or enterprise"—without regard to the terms of such usage. *Id.* at 378, 4 L Ed 2d at 387. The Supreme Court compared that statute, as it had been construed and applied to the appellant, to another state statute that permitted taxation of property leased from the state *only* if the lessee held the property under a lease for a term of three years or more. The Supreme Court concluded that the former statute unlawfully discriminated against the United States and its lessees because it authorized taxation of lessees

■ OAR 150-307.110 is the Department's interpretation of a related statutory provision, *viz.*, ORS 307.110. ORS 307.110 pertains to the taxation of nonexempt parties who hold state and local, rather than federal, government property. However, with respect to the particulars that are relevant in this proceeding, ORS 307.110 is almost identical to ORS 307.060: It provides for assessment or taxation of government property that is "held under a lease or other interest or estate less than a fee simple" by any nonexempt party. *See generally Avis* (illustrating scope and application of ORS 307.110). Although the rule might suggest that the Department tentatively has held a different view, we have no reason to believe that the legislature intended that the Department use different standards for determining whether a party "holds" government property, depending on whether the property is owned by the state, a local government, or the United States. Moreover, the rule is not being applied in this case and is not an authoritative statement of the way ORS 307.110 should be interpreted. In short, taxpayer's suggestion that it would have been treated differently under the tax laws of this state, if its interest in the Intertie had been acquired from the state government rather than from BPA is speculative, and we are not persuaded by it. We hold that application of ORS 307.060 to taxpayer's interests under its "Capacity Ownership Agreement" with BPA does not violate the doctrine of intergovernmental tax immunity.[9]

The judgment of the Tax Court is affirmed.

---

of federal, but not state, land, when the lease at issue is subject to termination at the option of the lessor. *Id.* at 381-82, 4 L Ed 2d at 388-89.

[9] Taxpayer also argues that the assessment at issue violates the Supremacy Clause, Article VI, of the United States Constitution. Because taxpayer did not raise that argument before the Tax Court, we do not consider it here.