KISTLER, J.,
concurring in part and concurring in the judgment in part.
Relying on an 1885 federal district court decision, the majority holds that a bill that caused a tax to be imposed on plaintiffs’ property was not a “bil[l] for raising revenue” within the meaning of Article IV, section 18, of the Oregon Constitution.[1] It follows, the majority concludes, that Article IV, section 18, did not require that bill to originate *738 in the House of Representatives. In my view, the persuasive value of the 1885 federal decision on which the majority bases its holding is doubtful. Moreover, even if the district court’s decision were correct as applied to a levy-based tax system, applying that decision to a modern rate-based tax system eliminates much of the protection found in Article IV, section 18, and perhaps also in Article IV, section 25(2).[2] However, we need not resolve those issues to decide plaintiffs’ Article IV, section 18, claim. It is sufficient in this case to hold that, even if the 2009 bill were a “bill for raising revenue,” the bill complied with Article IV, section 18, because it effectively originated in the House of Representatives.
In Power Resources Cooperative v. Dept. of Rev., 330 Or 24, 996 P2d 969 (2000), this court held that public and private entities with certain contractual rights in the Pacific Northwest Intertie have a taxable property interest in that transmission line. In 2005, the Oregon legislature exempted out-of-state public bodies from paying a tax on that interest. Or Laws 2005, ch 832, § l.[3] Four years later, the legislature repealed that exemption. Or Laws 2009, ch 804, § 1. As a result of Power Resources and the 2009 repeal of the exemption, plaintiffs (out-of-state public bodies) must pay Oregon property taxes on their interests in the Intertie.
On review, plaintiffs raise two issues. First, they argue that we should overrule Power Resources. Alternatively, they argue that the 2009 bill repealing the 2005 exemption was a “bill for raising revenue” that, under Article IV, section 18, had to (but did not) originate in the House of Representatives. See Or Const, Art IV, § 18. I concur in the majority’s opinion to the extent that it reaffirms Power Resources. However, I would resolve plaintiffs’ Article IV, section 18, argument on a narrower ground than the majority does. I would hold, as the Tax Court did, that the 2009 bill, in effect, originated in the House.
*739 In Bobo v. Kulongoski, 338 Or 111, 122, 107 P3d 18 (2005), this court identified two criteria to determine when a bill will be a “bil[l] for raising revenue” that, under Article IV, section 18, must originate in the House. First, the bill must “collec[t] or brin[g] money into the treasury.” Id. Second, it must “posses [s] the essential features of a bill levying a tax.” Id. In this case, there is no dispute that the 2009 bill repealing the 2005 tax exemption “collects or brings money into the treasury.” Repealing the exemption will result in plaintiffs paying a tax that, since 2005, they have not had to pay. The dispute turns on the second criterion — whether the 2009 bill possesses the “essential features of a bill levying a tax.”
The majority relies on the federal district court’s decision in Dundee Mortgage Trust Co. v. Parrish, 24 F 197 (D Or 1885), in determining that the 2009 bill does not possess the “essential features of a bill levying a tax.” In Dundee, the district court held that a bill that added property to the tax rolls was not a bill that levied a tax.[4] The district court reasoned: *740 Dundee, 24 F at 201. The court thus distinguished, in a levy-based tax system, between bills that put a class of property on the tax rolls and bills that actually “lev[y] a tax” on that property. Cf. Clackamas Cty Assessor v. Village at Main St. Phase II, 349 Or 330, 338-39, 245 P3d 81 (2010) (explaining that, in 1907, taxation consisted of a three-step process: listing property on the assessment rolls, determining the amount of taxes needed, and then levying a tax on the listed property to raise the amount of taxes needed). Put differently, the court recognized, perhaps somewhat cryptically, that the act of listing a new class of property on the tax rolls is distinct from the act of levying a tax on that property and that only the latter act is subject to Article IV, section 18. See Dundee, 24 F at 201.
*739 “True, [the act] provides that when revenue is to be raised mortgages shall contribute thereto as land; but it does not authorize or provide for levying any tax or raising a cent of revenue.”
*740 In my view, the persuasive value of the district court’s decision in Dundee is limited. The decision simply states a conclusion. It does not explain it. Although this court has quoted the general principles that the district court stated in Dundee, which it drew from Justice Story’s treatise on constitutional law, until today, this court has never adopted the specific holding in Dundee. In Northern Counties Trust v. Sears, 30 Or 388, 403, 41 P 931 (1895), the court held only that a bill imposing a fee for services was not a bill for raising revenue. And in Bobo, the court held that a bill that redistributéd money already in the treasury was not a bill for raising revenue because it did not collect or bring money into the treasury. 338 Or at 122. The court’s holding today goes beyond those more limited decisions.
Beyond that, even if the federal district court’s reasoning were correct in a levy-based tax system, applying that holding in a rate-based tax system is problematic, as an example will illustrate. Personal income taxes are a familiar example of a rate-based tax. Under the federal district court’s reasoning in Dundee, the only bill that would be a bill for raising revenue would be the bill that set or changed the tax rate. Bills that expanded the definition of “income” to which the rate applied would not be subject to Article IV, section 18. However, in a rate-based system, where the tax rate is set, making property subject to that rate automatically results in its being taxed. It thus becomes more difficult *741 in a rate-based system to say that a bill that increases the property subject to a tax is not a bill for raising revenue.
We need not decide that potentially far-reaching issue to resolve this case. Rather, we may resolve this case on the narrower ground that the Tax Court identified. Specifically, given the unique history of the 2009 bill that repealed the 2005 tax exemption, I would hold that the 2009 bill “originated” in the House.
As noted above, former ORS 307.090(3) (2005) exempted from taxation certain out-of-state public entities that owned
“tangible or intangible property, property rights or property interests in or related to the Pacific Northwest AC Intertie, as referenced in a written capacity ownership agreement executed before November 4, 2005, between the United States Department of Energy and [those out-of-state public entities].”
In 2009, the legislature passed a bill that repealed former ORS 307.090(3) (2005). See Or Laws 2009, ch 804, § 1. The bill began in the Senate but in a completely different form. See Bill File, SB 495, Feb 11, 2009. As introduced in the Senate, the bill added property tax exemptions to ORS 307.090 for local service districts, people’s utility districts, electric cooperatives, and private utilities that had taxable interests in the Pacific Northwest Intertie. See id. § 1 (adding additional exemptions to ORS 307.090). As passed out of the Senate, the bill added an exemption only for electric cooperatives. See Bill File, SB 495, May 4, 2009 (A-Engrossed bill).
When the bill went to the House, the House made a different policy choice. The House rejected the Senate’s proposed bill, which would have added an exemption for electric cooperatives that have taxable interests in the Intertie. Instead of adding another exemption, the House deleted the existing exemption for out-of-state public entities that have taxable interests in the Intertie. Bill File, SB 495, June 3, 2009 (B-Engrossed bill). The bill returned to the Senate, which concurred in the House’s changes, and the Governor signed the bill.
*742 Given that history, I would hold that, when the House removed all the operative provisions of a bill that had originated in the Senate and replaced those provisions with a bill that raised taxes, the bill “originated” in the House for the purposes of Article IV, section 18. This is not a case in which the House merely amended a bill that originated in the Senate; rather, the process that occurred here was far closer to a “gut and stuff’ where the operative provisions of the Senate bill were “gutted” and the House “stuffed” new operative provisions into SB 495.[5] To be sure, the title of the bill remained unchanged. However, all the operative provisions of the bill were added in the House. Given that circumstance, I would hold, as the Tax Court did, that the bill repealing the 2005 tax exemption “originated” in the House. Accordingly, I concur in the court’s opinion to the extent it reaffirms Power Resources, but I concur in the court’s judgment to the extent it upholds the 2009 act against plaintiffs’ Article IV, section 18, challenge.
Landau, J., joins in this opinion.

 Article IV, section 18, provides:
“Bills may originate in either house, but may be amended, or rejected in the other; except that bills for raising revenue shall originate in the House of Representatives.”

 Article IV, section 25(2), provides that “[t]hree-fifths of all members elected to each House shall be necessary to pass bills for raising revenue.”

 ORS 307.090(1) generally exempts property owned by state and local Oregon governments from property taxes. That exemption does not apply to out-of-state public bodies, however. As noted, the 2005 legislature added a specific exemption for out-of-state public bodies that hold otherwise taxable interests in the Intertie. See former 307.090(3) (2005).

 The Department of Revenue argues that the 1882 act at issue in Dundee and also in Mumford v. Sewall, 11 Or 67 (1883), repealed a tax exemption and that bills that repeal a tax exemption are not bills for raising revenue. The department misperceives the nature of statute at issue in Dundee and Mumford. Before 1882, Oregon statutes provided that “personal property, including debts secured by [a] mortgage, was listed to the owner in the county where he lived, and real property in the county in which it was situated.” Dundee, 24 F at 201. In 1882, the legislature changed those statutes by providing that “a mortgage, deed of trust, [and the like] * * * shall be assessed and taxed to the owner of such security and debt in the county, city or district in which the land or real property affected by such security is situated.” Or Laws 1882, pp 64-65, §§ 1, 2.
The 1882 act had little effect on in-state lenders. For in-state lenders, the 1882 act did not change their obligation to pay state property taxes on all debts, including mortgages. It merely shifted the county in which the tax was due from the county where the in-state lender lived to the county where the land that secured the debt was located. For out-of-state lenders, however, the 1882 act had a greater effect. Before that time, out-of-state lenders may have owed personal property taxes on the mortgages in their home states, but they did not owe property taxes on their mortgages in Oregon. The 1882 act thus added mortgages held by out-of-state lenders to the class of property listed on the Oregon tax rolls; the act did not repeal an exemption.

 “Gut and stuff” refers to “removing the text of a measure and inserting entirely new language which, while it may change the nature of the measure completely, still must fall under the measure’s title, also known as the ‘relating-to’ clause.” Oregon Legislature, Legislative Glossary, available at https:// www.oregonlegislature.gov/citizen_engagement/Pages/Legislative-Glossary. aspx (last accessed July 8, 2015); see State v. Medina, 357 Or 254, 261 & n 6, 324 P3d 526 (2015) (explaining that gutting and stuffing frequently occurs to take advantage of a favorable relating clause). Although the revisions in SB 495 were not a classic gut and stuff, they accomplished the same result.